STATE OF NORTH CAROLINA v. JAMES E. NORMAN

No. 7215SC338

(Filed 24 May 1972)

1. **Rape § 18— assault with intent to rape — sufficiency of evidence of intent**

The State's evidence was sufficient for the jury to find that defendant assaulted the prosecutrix with intent to commit rape where it tended to show that the prosecutrix, wearing a "hot pants" outfit, was walking alone on a city street late at night, that defendant followed her in a car and then intercepted her on foot, asked her for a match, touched her on the breast, grabbed her when she tried to run and choked her until she was unconscious, that the prosecutrix suffered a broken jaw, concussion and ear injury, and that the sleeve of her blouse and her pants were torn.

2. **Rape § 18— assault with intent to rape — failure to submit lesser offenses**

In a prosecution for assault with intent to commit rape, the trial court did not err in failing to submit lesser included offenses where all the evidence tends to show that defendant committed the crime charged in the indictment and there was no conflicting evidence relating to any element of the crime charged.

3. **Rape § 18; Criminal Law § 2— intent — proof by circumstantial evidence — instructions**

     In a prosecution for assault with intent to commit rape, the trial court's instruction that intent is an attitude or emotion of the mind seldom if ever susceptible of proof by direct evidence but ordinarily to be proved by facts and circumstances from which it may be inferred, and that in determining the presence or absence of the element of intent the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged, *held* without error.

APPEAL by defendant from *Hobgood, Judge,* 29 November 1971 Session of Criminal Court held in ALAMANCE County.

The defendant, James E. Norman, was charged in a bill of indictment, proper in form, with assaulting, Sandra Lee Brewer, a female, with intent to commit rape, a violation of G.S. 14-22. The defendant pleaded not guilty.

The State offered evidence tending to show the following: on 3 July 1971 at about 11:30 p.m. Sandra Lee Brewer, a 22 year old third grade school teacher, wearing a new "hot pants" outfit, left the home of some friends on Hedge Street in the town of Burlington to walk the four blocks to the "Putt-putt" golf course on Church Street. When Sandra saw her fiance driving in the opposite direction, she turned around to walk back to the house on Hedge Street. As Sandra walked along Cross Street within one block of her destination on Hedge Street and about three blocks from the "Putt-putt" she heard a horn honking and saw a red convertible with the top down occupied by one person being driven very near the curb coming behind her. She kept her head down to try to ignore the car and cut "cater-corner" across a vacant lot to go over to Hedge Street and as she got on the grass and looked up she saw the defendant, a Negro male approximately six feet tall with high cheek bones and a mustache, standing in front of her. She saw the red convertible parked near the corner of Hedge and Cross Streets. Miss Brewer testified:

> " . . . I kept my eye on the car, when I realized it was the same car that had passed me on Church Street that I had noticed too, is when I felt I was in serious trouble."

The defendant asked her for a match, and when she told him she did not have one and started to move, he jumped so "I knew he wasn't going to let me move."

" . . . I said, 'Please go away and leave me alone,' and he reached out and touched me on the breast and said, 'Don't be afraid, baby.'

After that I thought maybe I would try to run and when I tried he grabbed me around the neck and choked me until I was unconscious."

The next thing Miss Brewer recalled was being in the home of a Mr. and Mrs. Johnson.

Donald W. Johnson, who resided at 1426 Cloverdale Drive in the town of Burlington about five blocks from the intersection of Cross and Church Streets, testified:

"After midnight that would be July 4th. When I first saw her, I opened the door for her and she told me to help her, she was crying and hysterical. * * * My wife got a washcloth and put some ice in it and put it on her face . . . . * * *

* * *

* * * . . . I remember one sleeve was torn and her pants were torn . . . .

I observed her face. It was badly swollen and her jaw was to me looked like it was broken, out of place.

* * *

. . . (H)er mouth was bleeding pretty bad."

Miss Brewer was taken to the emergency room of the Alamance County Hospital and later to the Duke University Hospital where she remained until 7 July 1971. She had a broken jaw, concussion, and a slight ear injury.

The defendant did not testify but his girl friend Etrulia Lloyd testified that she was with the defendant all day on 3 July 1971 and that about 10:00 p.m. on that evening she and the defendant left Burlington and arrived at the Ponderosa Club in Greensboro at about 10:30 p.m. where they stayed until approximately 6:00 a.m. on 4 July 1971.

The jury found the defendant guilty and from a judgment on the verdict imposing a prison sentence of 10 years, the defendant appealed.

*Attorney General Robert Morgan and Assistant Attorney General Richard N. League for the State.*

*Fred Darlington III for defendant appellant.*

HEDRICK, Judge.

[1]   The defendant assigns as error the Court's denial of his motion for judgment as of nonsuit made at the close of the State's evidence and renewed at the close of all the evidence. The defendant contends the evidence was insufficient to show an intent to commit rape.

The requisites of the crime with which defendant is charged were recently stated by Justice Sharp in *State v. Hudson*, 280 N.C. 74, 185 S.E. 2d 189 (1971):

"... To convict a defendant on the charge of an assault with an intent to commit rape the State must prove not only an assault but that the defendant intended to gratify his passion on the person of the woman, at all events and notwithstanding any resistance on her part. It is not necessary that defendant retain that intent throughout the assault; if he, at any time during the assault, had an intent to gratify his passion upon the woman, notwithstanding any resistance on her part, the defendant would be guilty of the offense. * * * To convict a defendant of an assault with intent to commit rape 'an actual physical attempt forcibly to have carnal knowledge need not be shown.' 75 C.J.S. Rape § 77, p. 557 (1952)."

Although Miss Brewer was unable to testify as to what occurred from the time she was choked into unconsciousness until she arrived at the Johnson home almost one hour later, we think her testimony as to events leading up to the cruel and brutal assault upon her together with the evidence as to her physical and emotional condition after the assault is sufficient to raise an inference that the assault was sexually motivated and that the defendant intended to gratify his passion upon her notwithstanding any resistance on her part. *State v. Gammons*, 260 N.C. 753, 133 S.E. 2d 649 (1963). We need not speculate as to why the defendant did not accomplish his purpose. *State v. Hudson, supra; State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968).

State v. Norman

When the evidence is considered in the light most favorable to the State, we hold it is sufficient to take the case to the jury and to support the verdict.

[2] Next the defendant assigns as error the Court's failure to instruct the jury on the "lesser included offenses" of assault with a deadly weapon with intent to kill inflicting serious injury; assault with a deadly weapon inflicting serious injury; and assault inflicting serious injury.

G.S. 15-169 provides:

*"Conviction of assault, when included in charge.*—On the trial of any person for rape, or any felony whatsoever, when the crime charged includes an assault against the person, it is lawful for the jury to acquit of the felony and to find a verdict of guilty of assault against the person indicted, if the evidence warrants such finding; and when such verdict is found the court shall have power to imprison the person so found guilty of an assault, for any term now allowed by law in cases of conviction when the indictment was originally for the assault of a like character."

In discussing this statute in *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545 (1954), Justice Bobbitt (now Chief Justice) said,

". . . The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor. Hence, there is no such necessity if the State's evidence tends to show a completed robbery and there is *no conflicting evidence* relating to elements of the crime charged. Mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice."

In the present case all of the evidence tends to show that the defendant committed the crime charged in the bill of indictment and there was no conflicting evidence relating to any element of the crime charged. This assignment of error is overruled.

[3] The defendant's final assignment of error relates to the Court's instructions to the jury as to the use of circumstantial

evidence in proving specific intent. Intent to rape is an essential element of the crime charged, and the judge's instruction that intent is an attitude or emotion of the mind seldom if ever susceptible of proof by direct evidence but ordinarily to be proved by facts and circumstances from which it may be inferred and that in determining the presence or absence of the element of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged is substantially the same as that approved many times by the appellate courts of this State. *State v. Ferguson*, 261 N.C. 558, 135 S.E. 2d 626 (1964) ; *State v. Watson*, 222 N.C. 672, 24 S.E. 2d 540 (1943). We find the judge's instructions to the jury to be fair, correct, and free from prejudicial error. In the defendant's trial in the Superior Court, we find no prejudicial error.

No error.

Judges BRITT and PARKER concur.