STATE OF NORTH CAROLINA v. MARK H. SCHULTZ

No. 874SC309

(Filed 22 December 1987)

**1. Rape and Allied Offenses § 5— attempted second degree rape—sufficiency of evidence of intent**

The trial court did not err in denying defendant's motions to dismiss the charge of attempted second degree rape, since the victim's testimony that defendant dragged her down a hallway toward a guest bedroom, put his hand down over her shoulder and down the front of her shirt, and grabbed her breasts was sufficient circumstantial evidence from which the jury could infer defendant's intent to engage in vaginal intercourse with the victim by force and against her will.

**2. Rape and Allied Offenses § 4.1— attempted second degree rape—earlier similar incident—evidence admissible**

In a prosecution for attempted second degree rape and second degree kidnapping, the trial court did not err in allowing the State to present evidence concerning an incident two years earlier involving defendant's assault on a female, since the identity of defendant was put in issue by defendant's alibi defense; the earlier incident was not too remote in time to be probative; and the incidents were similar in that both began when a man came to the female victim's residence to inquire about a lost dog, left his name and number in the event the victim saw the dog, asked to use the phone and the bathroom, and toyed with the lock of the victim's front door before seizing hold of her.

Judge BECTON dissenting.

APPEAL by defendant from *Strickland, Judge.* Judgment entered 4 December 1986 in Superior Court, ONSLOW County. Heard in the Court of Appeals 24 September 1987.

Defendant was charged with attempted second degree rape and with second degree kidnapping. At trial, the State's evidence tended to show that at approximately 5:00 p.m. on 9 September 1986 a man identified as defendant rang the doorbell at the residence of Kelly Ann Tease, a high school student age 17, who lived with her parents and was at home alone. When Ms. Tease opened the door, the man asked if she had seen a basset hound. She said no, but agreed to take his name and telephone number in case she did see the dog. The man then asked to use the telephone, and Ms. Tease consented. After using the telephone, the man asked to use the bathroom. When he came out of the bathroom, the man went to the foyer and fumbled with the double doors, asking Ms.

Tease which door led out. As Ms. Tease attempted to open the door, the man grabbed her from behind and asked her for her money. Ms. Tease stated that she had no money and that she did not work. The man then asked her if he could see her underwear drawer. With one hand across her mouth and the other arm around her body, the man dragged Ms. Tease down the hall leading to the guest room. In the hall, he dropped Ms. Tease in a corner, and she began to scream. The man, panicking, again picked up Ms. Tease and attempted to push her into the guest bathroom. Ms. Tease continued to resist him. At this point, the man put one hand over the shoulder and down the shirt of Ms. Tease, and touched her breasts. Ms. Tease then bit the forefinger of the man's other hand which was across her mouth, and the man released her. Ms. Tease promised not to "say anything" because that was what she thought the man wanted to hear. The man left the house. This episode lasted approximately twenty-five to thirty minutes. Ms. Tease was treated later at the hospital for scratches and bruises she received in the struggle.

At the close of the State's evidence, the court denied defendant's motion to dismiss the charge of attempted second degree rape. Defendant presented evidence of an alibi defense as well as evidence tending to show his good character and reputation. Defendant also testified on direct examination that he had previously pled guilty to "being in [a] woman's house with her permission, and possibly stepping back on her breaking her fingernail . . . ."

In rebuttal, the State introduced evidence that defendant had pled guilty to a charge of assault on a female resulting from an incident that occurred in April 1985. The State showed that on 1 April 1985 defendant went to the home of Peggy Dyer and asked her if she had seen a German shepherd. When she said no, he asked to use her phone. He then left a number for her to call if she saw the dog. A few days later, defendant returned to Ms. Dyer's home, asking if a set of keys he had found belonged to her. She answered in the negative. The next morning, defendant again went to Ms. Dyer's home and asked to use her telephone. After using the telephone, defendant asked to use the bathroom. Defendant then left the house. Ms. Dyer had begun to get ready for work when she heard her front door open. She found defendant fumbling with the lock on the door. When asked what he was doing, defendant asked if Ms. Dyer wanted the door locked. Ms.

Dyer told him to "go on" and she would "get the door." At that point, defendant pushed Ms. Dyer against the wall by a closet, held her arms down, and covered her mouth with his hand. She screamed, and defendant ran out the door.

At the close of all the evidence, the court again denied defendant's motion to dismiss the charge of attempted second degree rape. The jury found defendant guilty of one count of attempted second degree rape and one count of second degree kidnapping. The offenses were consolidated for judgment, and, after finding factors in aggravation and mitigation of punishment, the trial judge sentenced defendant to twenty years' imprisonment. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Kaye R. Webb, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Leland Q. Towns, for defendant-appellant.*

PARKER, Judge.

Defendant has raised two issues in this appeal: whether the trial court erred in denying his motions to dismiss the charge of attempted second degree rape and whether the trial court erred in allowing into evidence testimony regarding the incident that occurred in April 1985. We find defendant's arguments as to both issues to be without merit.

[1] Defendant first argues that the evidence presented by the State was insufficient as a matter of law to establish defendant's guilt beyond a reasonable doubt as to the charge of attempted second degree rape. We disagree.

Our Supreme Court has recently recited the duty of the trial court in considering a criminal defendant's motion to dismiss:

> Upon a motion to dismiss in a criminal prosecution, the trial court must view the evidence in the light most favorable to the state, giving the state the benefit of every reasonable inference that might be drawn therefrom. . . . The trial judge must decide if there is substantial evidence of each element of the offense charged. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. (Citations omitted).

*State v. Etheridge,* 319 N.C. 34, 47, 352 S.E. 2d 673, 681 (1987).

General Statute 14-27.3(a) provides the following in relevant part:

> A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:
>
> (1) By force and against the will of the other person
>     . . . .

General Statute 14-27.6 makes the attempt to commit second degree rape a Class H felony. Under applicable North Carolina case law, to convict a defendant of attempted rape, the State must prove, beyond a reasonable doubt, two essential elements: (i) that defendant had the specific intent to rape the victim and (ii) that defendant committed an act that goes beyond mere preparation, but falls short of the actual commission of the rape. *State v. Boone,* 307 N.C. 198, 210, 297 S.E. 2d 585, 592 (1982); *State v. Hall,* 85 N.C. App. 447, 452, 355 S.E. 2d 250, 253 (1987).

The critical question in this case is whether the State met its burden of showing defendant's intent. The State is not required to show that the defendant made an actual physical attempt to have intercourse, *State v. Hudson,* 280 N.C. 74, 77, 185 S.E. 2d 189, 191 (1971), *cert. denied,* 414 U.S. 1160, 94 S.Ct. 920, 39 L.Ed. 2d 112 (1974), and defendant's actions clearly exceeded "mere preparation." *See State v. Hall,* 85 N.C. App. at 452, 355 S.E. 2d at 253. The element of intent as to the offense of attempted rape is established if the evidence shows that defendant, at any time during the incident, had an intent to gratify his passion upon the victim, notwithstanding any resistance on her part. *State v. Moser,* 74 N.C. App. 216, 220, 328 S.E. 2d 315, 317 (1985). It is not necessary that defendant retain the intent throughout the incident. *State v. Hudson,* 280 N.C. at 77, 185 S.E. 2d at 191; *State v. Gammons,* 260 N.C. 753, 755, 133 S.E. 2d 649, 651 (1963). Furthermore, "Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence, it must ordinarily be proven by circumstantial evidence, i.e., by facts and circumstances from which it may be inferred." *State v. Gammons,* 260 N.C. at 756, 133 S.E. 2d at 651.

Our Courts have addressed the issue of the sufficiency of the evidence of intent to commit rape in a variety of factual situa-

tions. *See, e.g., State v. Whitaker,* 316 N.C. 515, 342 S.E. 2d 514 (1986); *State v. Hankins,* 64 N.C. App. 324, 307 S.E. 2d 440 (1983), *aff'd per curiam,* 310 N.C. 622, 313 S.E. 2d 579 (1984); *State v. Dawkins,* 305 N.C. 289, 287 S.E. 2d 885 (1982); *State v. Hall, supra; State v. Powell,* 74 N.C. App. 584, 328 S.E. 2d 613 (1985); *State v. Rushing,* 61 N.C. App. 62, 300 S.E. 2d 445, *aff'd per curiam,* 308 N.C. 804, 303 S.E. 2d 822 (1983); *State v. Norman,* 14 N.C. App. 394, 188 S.E. 2d 667 (1972). In each of these cases where the evidence of intent was found sufficient, the defendant manifested his sexual motivation by some overt act. *See, e.g., State v. Whitaker, supra* (defendant verbally expressed his intent to commit cunnilingus with the victim); *State v. Hall, supra* (defendant pulled the victim's shirt down and touched her breasts); *State v. Powell, supra* (defendant undressed himself in room where victim was sleeping and began to fondle his genitalia); *State v. Norman, supra* (defendant touched the victim on the breast).

In the case before us, the victim testified that defendant dragged her down a hallway toward a guest bedroom, and that he put his hand down over her shoulder and down the front of her shirt and grabbed her breasts. This evidence is sufficient circumstantial evidence from which the jury could infer defendant's intent to engage in vaginal intercourse with the victim by force and against her will.

Defendant's contention that the case of *State v. Rushing, supra,* is dispositive of the issue of intent is meritless. In *Rushing,* the State's evidence showed that defendant entered the victim's bedroom window at night, awakening the victim. Defendant wore dark pants, no shirt, and white gloves. When the victim asked who he was, defendant stated, " 'Don't holler, don't scream, I got a gun, I'll shoot you.' " When the victim backed away from him, defendant grabbed her arm, and prevented her from turning on a light. When a child sleeping in the room woke up and began to scream, defendant fled. The Court held that the evidence did not permit an inference that defendant intended to commit rape because there was no "overt manifestation of an intended forcible sexual gratification." *State v. Rushing,* 61 N.C. App. at 66, 300 S.E. 2d at 449. The case before us is distinguishable in that there was such an overt manifestation in the defendant's touching of the victim's breasts. *See State v. Hall, supra; State v. Norman, supra.*

Defendant's argument that the evidence shows only his intent to rob the victim is also without merit. The fact that defendant verbally manifested his intent to rob the victim when he first grabbed hold of her does not exclude a reasonable inference by the jury that once defendant learned the victim had no money, he formed the intent to gain some other gratification from the situation. *See State v. Whitaker, supra; State v. Hall, supra.* The evidence showed that after Ms. Tease told defendant she had no money, defendant dragged her down the hall and during the struggle grabbed her breast. Notwithstanding the possibility of other inferences, this evidence is sufficient to raise an inference of intent to commit rape. *See State v. Whitaker, supra; State v. Hall, supra.*

[2] The final issue presented by this appeal is whether the trial court erred in allowing the State to present evidence concerning the incident in April 1985 that led to defendant's conviction on a plea of guilty to assault on a female. We find that the court did not err in allowing this evidence.

General Statute 8C-1, Rule 404(b), provides that evidence of crimes, wrongs or acts other than those specifically at issue in the trial is inadmissible "to prove the character of a person in order to show that he acted in conformity therewith"; however, such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." The test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not too remote in time so as to be more probative than prejudicial under the balancing test of G.S. 8C-1, Rule 403. *State v. Cotton,* 318 N.C. 663, 665, 351 S.E. 2d 277, 278-79 (1987); *State v. Scott,* 318 N.C. 237, 248, 347 S.E. 2d 414, 420 (1986).

In the case before us, evidence of the incident that occurred in April 1985 was clearly probative of defendant's identity as the man who entered Ms. Tease's home on 9 September 1986. The identity of defendant was put in issue by defendant's alibi defense. *See State v. Thomas,* 310 N.C. 369, 312 S.E. 2d 458 (1984); *State v. Freeman,* 303 N.C. 299, 278 S.E. 2d 207 (1981). Application of the identity exception of Rule 404(b) requires that some unusual facts or particularly similar acts be present in both crimes indicating that the same person committed both crimes.

*State v. Riddick*, 316 N.C. 127, 133, 340 S.E. 2d 422, 426 (1986); *State v. Moore*, 309 N.C. 102, 106, 305 S.E. 2d 542, 545 (1983). The two incidents in the case before us are strikingly similar in many respects. Both incidents began when a man came to the female victim's residence to inquire about a lost dog. In each case, the man left his name and number in the event the victim saw the dog. The man asked to use the telephone and the bathroom in both incidents. In each situation, the man toyed with the lock of the victim's front door before he seized hold of her.

Defendant, however, contends that the time elapsed between the incidents, approximately twenty-one months, rendered the April 1985 incident too remote in time to be probative. This argument is without merit.

Whether or not to exclude evidence under G.S. 8C-1, Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice is a matter within the sound discretion of the trial judge. *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986). We find no abuse of that discretion here.

Remoteness in time is most important where evidence of another crime is used to show that both crimes arose out of a common scheme or plan: "Remoteness in time is less important when the other crime is admitted because its *modus operandi* is so strikingly similar to the *modus operandi* of the crime being tried as to permit a reasonable inference that the same person committed both crimes." *State v. Riddick*, 316 N.C. at 134, 340 S.E. 2d at 427. Generally, remoteness in time goes to the weight of the evidence and not to its admissibility. *State v. Brown*, 280 N.C. 588, 187 S.E. 2d 85, *cert. denied*, 409 U.S. 870, 93 S.Ct. 198, 34 L.Ed. 2d 121 (1972); *State v. Hall, supra.* For cases sustaining the admission of other crimes committed at similar or longer intervals from the crime being tried, see *State v. Riddick, supra; State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed. 2d 1137 (1980); *State v. Stegmann*, 286 N.C. 638, 213 S.E. 2d 262 (1975), *sentence vacated*, 428 U.S. 902, 96 S.Ct. 3203, 49 L.Ed. 2d 1205 (1976); *State v. Hall, supra.*

For the foregoing reasons, we find

No error.

Judge JOHNSON concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

Believing that this case is controlled by *State v. Freeman,* 307 N.C. 445, 298 S.E. 2d 376 (1983); *State v. Gammons,* 260 N.C. 753, 133 S.E. 2d 649 (1963); *State v. Gay,* 224 N.C. 141, 29 S.E. 2d 458 (1944); and *State v. Rushing,* 61 N.C. App. 62, 300 S.E. 2d 445 (1983), I dissent. In my view, the evidence presented by the State was insufficient as a matter of law to establish defendant's guilt of attempted second degree rape, and I therefore vote to reverse the attempted second degree rape conviction.

Discussing the offense of attempted rape, this court in *Rushing* said:

> . . . in order to carry its burden, it was necessary for the State to present sufficient evidence to permit the jury to find first, that when defendant assaulted the prosecutrix he intended to engage in forcible, nonconsensual intercourse with her and second, that in the ordinary and likely course of events his assaultive acts would result in the commission of a rape.

61 N.C. App. at 67, 300 S.E. 2d at 449.

In the case *sub judice,* the evidence in the light most favorable to the State shows the following. Defendant grabbed the prosecuting witness from behind. Placing his left arm under her left arm, defendant then picked her up and asked her for money. When she said she did not have any money, defendant asked to see her underwear drawer and started pulling her down the foyer and guest room hall in such a manner that her feet were not always on the ground. At that point, the direct examination reveals the following:

> . . . [h]e was just kind of holding me up and I was screaming and he dropped me in the corner before the guest bedroom and I started screaming real loud and he got real panicky and he picked me back up and tried to shut me in the guest bathroom and I was fighting back and he put his hands down over

my right shoulder and down my shirt and at that time I bit his finger.

Q. Okay, hold on a second, when he put his hand, you say his hand, which hand?

A. His right hand.

Q. He put his right hand down your shirt, did he grab part of your body?

A. He grabbed my chest.

Q. Your breasts?

A. Yes sir.

Q. After he did that, where was his left hand?

A. I'm not really sure.

Q. O.K., you indicated you bit his hand, do you know which hand you bit?

A. It must have been his left hand, his left hand was over my mouth and I bit his index finger.

Q. What did he do then?

A. He got up and walked to the foyer and he went to the doors and I came out and I said, "I promise I won't say anything," and he said, "you promise," and ran out of the door.

The foregoing evidence does not show the requisite "overt manifestation of an intended forcible sexual gratification" discussed in *Rushing,* 61 N.C. App. at 66, 300 S.E. 2d at 449. Moreover, in my view, the foregoing evidence is weaker than the evidence in *Freeman, Gammons, Gay,* or *Rushing.* This court, in *Rushing,* thoroughly reviewed the precedent:

. . . In *State v. Gay,* 224 N.C. 141, 29 S.E. 2d 458 (1944), our Supreme Court held that where the defendant indecently exposed himself to the victim on a city street, posed an indecent question and chased her briefly when she screamed and ran, but did not touch the victim, there was insufficient evidence of assault with intent to commit rape because there was no showing that the defendant intended to gratify his

passions notwithstanding the resistance of the victim. The
Court, noting that the evidence would warrant a verdict of
guilty of assault on a female, granted the defendant a new
trial.

In *State v. Gammons,* 260 N.C. 753, 133 S.E. 2d 649
(1963), the evidence tended to show that the defendant, who
was a minister, told the prosecutrix that the Lord had told
him to have sexual relations with her in order to heal her,
pushed her down on a bed and laid on top of her, put his
hand up her dress removing her underclothes and touched
her "body" with his. When the woman threatened to scream,
which would have alerted the minister's wife, he ceased in
his efforts, threatening her with death should she tell. The
Court held that there was insufficient evidence to show that
the defendant intended to overcome the victim's resistance
and granted the defendant a new trial on the lesser included
misdemeanor of assault on a female.

\*   \*   \*

In *Freeman,* the State's evidence tended to show that
the defendant, dressed in a sweat shirt type jacket and blue
jeans, upon asking permission to enter and being refused,
twice forcibly entered the female victim's home at night tell-
ing her that she "shouldn't have enticed" him. *Citing State v.
Bell, supra* as an example of where sufficient intent to rape
had been shown, the Court held that defendant Freeman's
conviction of burglary could not stand, stating that "[t]here
was nothing in defendant's dress or demeanor to suggest an
intent to commit rape" and that the "words spoken by the de-
fendant . . . , [i]n light of [the victim's] testimony that she
was fully clothed and in no way encouraged the defendant,
. . . are at best ambiguous and . . . are virtually mean-
ingless."

61 N.C. App. at 64-67, 300 S.E. 2d at 448-49. Based on the forego-
ing precedent, the *Rushing* court held the following evidence
insufficient to show intent to rape:

The prosecutrix was awakened from her sleep on 3 August
1981 in the early morning hours by a noise. Although there
was no light in her room, she saw someone climb in her win-

dow. She could tell that the intruder . . . was wearing dark pants, white fabric gloves, and no shirt. The women asked who it was and he said, "Don't holler, don't scream, I got a gun, I'll shoot you." The prosecutrix backed up to the head of her bed, whereupon the intruder came to the side of the bed and grabbed her arm. Every time she tried to turn on the light, the man told her not to move. The prosecutrix started screaming . . . . The intruder put his hand over her mouth. Her small child woke and started screaming. The man let go of her arm and dove out the window head first.

61 N.C. App. at 62-63, 300 S.E. 2d at 447.

Considering the precedent, I believe the evidence in the case *sub judice* fails to show that when defendant assaulted the prosecuting witness, he intended to engage in forcible nonconsensual intercourse with her and it fails to show that in the ordinary and likely course of events his assaultive acts would result in the commission of a rape.