GEER, Judge.
A jury found defendants Donald Larson and Donald Larson, Inc. ("DLI") liable for breach of express warranty, breach of the implied warranty of workmanlike construction, and fraud in connection with the construction of a house for plaintiffs Timothy D. Shafman and Mary C. Donlon. Defendants appeal from the judgment and the order denying their post-trial motions, arguing primarilythat the record contains insufficient evidence of fraud and, with respect to the warranty claims, that the trial court erred in admitting evidence regarding another house constructed by defendants. Based on our review of the record, we hold (1) that the trial court properly denied defendants' directed verdict and post-trial motions with respect to fraud and (2) that the trial court did not abuse its discretion in determining that the probative value of the evidence of the other house to prove defendants' intent, knowledge, and plan outweighed the evidence's prejudicial effect.
Plaintiffs cross-appealed from the trial court's entry of a directed verdict on their unfair and deceptive trade practices claim and refusal, following trial, to treble the fraud damages awarded by the jury. Because the jury's verdict that defendants committed fraud established the existence of unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (2003), we reverse the trial court's order directing a verdict on the N.C. Gen. Stat. § 75-1.1 claim and remand for entry of judgment trebling the fraud damages and for a hearing on plaintiffs' request for attorneys' fees.
Facts
On 10 June 1999, plaintiffs Timothy D. Shafman and Mary C. Donlon, who are married, entered into a contract to buy a house tobe built by DLI in Durham, North Carolina. Defendant Donald Larson is president of DLI and, at that time, held a limited residential general contractor's license. In 1999, N.C. Gen. Stat. § 87-10(a) (1999) provided that "the holder of a limited license shall be entitled to act as general contractor for any single project with a value of up to two hundred fifty thousand dollars ($250,000) . . . ."
The parties' contract specified that the price of the house was $425,000. Attached to the contract was a "New Construction Addendum" that provided: "Seller represents and certifies that the name of the duly licensed general contractor who constructed the improvements on the property is Donald Larson." The addendum contained a one-year warranty:
Seller will make all necessary repairs and corrections to the House, either interior or exterior, structural or nonstructural, that shall become necessary by reason of faulty construction, labor or materials or non-conformity of construction to the Plans and Specifications.
Mr. Larson signed the addendum for DLI.
On 22 June 1999, Mr. Larson, acting for DLI, submitted a building permit application to the Orange County Planning & Inspections Department. Mr. Larson stated on the application that the "total cost of construction," excluding the cost of land, was $220,000. Shortly thereafter, Mr. Larson, in seeking aconstruction loan from Central Carolina Bank, gave the bank an estimate of "a total construction cost of $300,000." The bank ultimately loaned DLI $320,000 because the estimate had not included site costs. During construction, defendants obtained a second loan for $32,000. A loan officer at defendants' bank testified that the bank obtained an appraisal of the property in which the value of the house and lot upon completion was estimated at $425,000.
A certificate of occupancy was issued on 20 December 1999. At closing on the same date, plaintiffs paid $13,000 more than the purchase price of $425,000 because of overages. After closing, plaintiffs sent defendants an e-mail concerning uncompleted "punch list" items. Plaintiffs also began noticing signs of defects, including cracks in the walls, pooling of water in the driveway and elsewhere on the property, and overflowing gutters. In August 2000, eight months after plaintiffs moved into the house, Dr. Shafman called Mr. Larson to ask that the defects be repaired. Mr. Larson told him he was not going to repair the defects and hung up on him. Defendants did not make the requested repairs after that date.
At trial, various witnesses testified as to defects in the construction of the house and the paving. Engineer Thomas S. Gregory testified that the house had a major structural defect: the steel beams in the basement and garage were undersized and did not meet minimum design standards established by the North Carolina Building Code. Mr. Gregory testified that the presence of the beams in the house could result in a "catastrophic collapse." In addition, a subcontractor who had installed gutters on the house testified that he had advised Mr. Larson that there needed to be more downspouts than the two Mr. Larson had ordered him to install. Other contractors testified as to other defects not pertinent to this appeal.
On 8 January 2001, plaintiffs filed suit against DLI and Mr. Larson (under a piercing the corporate veil theory), alleging breach of contract, breach of express warranty, breach of the implied warranty of habitability, negligent supervision, negligence, fraud, negligent misrepresentation, and unfair and deceptive trade practices. At trial, the court allowed defendants' motion for a directed verdict on the claim for unfair and deceptive trade practices under N.C. Gen. Stat. §75-1.1, but denied the motion as to plaintiffs' fraud claim. The jury found defendants liable for breach of express and implied warranties and fraud. It awarded plaintiffs $95,295 on the warranty claims and $208,000 on the fraud claim.
Plaintiffs elected to accept the damages awarded for fraud and moved to amend the judgment to include treble damages, attorneys'fees, and costs. Defendants moved for judgment notwithstanding the verdict or, in the alternative, a new trial or amendment of the judgment pursuant to N.C.R. Civ. P. 59. The trial court denied all the post-trial motions except for plaintiffs' motion to recover costs. Defendants filed a timely appeal from the judgment; plaintiffs cross-appealed from the rulings on their N.C. Gen. Stat. § 75-1.1 claim.
In October 2002, both defendants filed Chapter 7 bankruptcy. The automatic stays were lifted on 18 April 2003, allowing this appeal to proceed.
I
Defendants contend that the trial court erred, under Rules 403 and 404(b) of the North Carolina Rules of Evidence, by admitting the testimony of Dr. James Efird and evidence that he filed a lawsuit against defendants. Dr. Efird testified that he purchased a home from DLI in 1997; his home is in a cluster of homes that includes plaintiffs' house. He testified that Mr. Larson did not tell him that he only had a limited license, that his house also contained major defects at closing, and that Mr. Larson had promised to repair the defects. Although defendants did repair some "punch list" items and other minor defects after closing, defendants refused to correct the major defects and Dr. Efird was forced to file suit. The trial court found that the evidence "should be admitted under Rule 404(b) for the purpose of showing the intent of Mr. Larson or the plan of Mr. Larson in selling both houses, and the knowledge of Mr. Larson, knowing that the homeowners were dissatisfied. And it's alleged in both cases that he failed or refused to take care of the complaints." Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
It is well-established that Rule 404(b) is a rule of inclusion and not a rule of exclusion. State v. Coffey, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990).
Determining the admissibility of evidence under Rule 404(b) involves a three-step analysis. First, the trial court must determine whether the evidence is offered for a proper purpose under the rule. State v. Bynum, 111 N.C. App. 845, 848, 433 S.E.2d 778, 780, disc. review denied, 335 N.C. 239, 439 S.E.2d 153 (1993). Second, the trial court must determine whether that purpose is relevant to the disputed issues. Id. Third, the trial court must determine "whether the incidents are sufficiently similar and not too remote in time so as to be more probative than prejudicialunder . . . Rule 403." State v. Schultz, 88 N.C. App. 197, 202, 362 S.E.2d 853, 857 (1987), aff'd per curiam, 322 N.C. 467, 368 S.E.2d 386 (1988). Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial judge and "abuse of that discretion will be found on appeal only if the ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision." State v. White, 349 N.C. 535, 552, 508 S.E.2d 253, 264 (1998) (internal quotation marks omitted), cert. denied, 527 U.S. 1026, 144 L. Ed. 2d 779, 119 S. Ct. 2376 (1999). A review of the record reveals that the trial court carefully followed this three-step analysis.
Defendants do not contend that the trial court erred in finding that the evidence was offered for a purpose permitted under Rule 404(b) - proof of intent, plan, or knowledge - or that the trial court erred in concluding that proof of that purpose was relevant to the claims at issue. See State v. Barfield, 127 N.C. App. 399, 404, 489 S.E.2d 905, 909 (1997) (testimony admissible as to defendant's intent or plan with respect to the victim client when two prior clients of the defendant testified they paid him to move their houses, but he failed to do so in each instance); Medina v. Town & Country Ford, Inc., 85 N.C. App. 650, 656, 355 S.E.2d 831, 835 (1987) (car buyer, who claimed that defendant maliciously prosecuted him, was allowed, under Rule 404(b), to offer thetestimony of another car buyer whose car was wrongly repossessed by defendant because evidence was relevant to defendant's intent and bad faith), aff'd per curiam, 321 N.C. 591, 364 S.E.2d 140 (1988). See also Campus Sweater & Sportswear Co. v. M. B. Kahn Constr. Co., 515 F. Supp. 64, 89 (D.S.C. 1979) (evidence of prior complaints were admissible under Fed. R. Evid. 404(b) as relevant to knowledge and intent with respect to warranty and fraud claims), aff'd without opinion, 644 F.2d 877 (4th Cir. 1981).
Defendants challenge the trial court's application of the third step of the analysis, arguing that Dr. Efird's testimony "was not substantially similar to the issues in the action by the Shafmans" because the testimony "involved a separate house, separate negotiations and a separate contract." If defendants' argument is taken at face value it would mean that other, "separate" incidents could never be admissible to prove intent, knowledge, or plan - a contention inconsistent with the plain language of Rule 404(b).
Defendants do not point specifically to any circumstance other than separateness that made Dr. Efird's experience not substantially similar to that of the Shafmans. The record shows that the trial court carefully considered the two transactions before finding that they were substantially similar and not so remote that the evidence was unfairly prejudicial to defendants. The trial court conducted the balancing test required by Rule 403, concluding that the probative value of the testimony was not outweighed by unfair prejudice to defendants. Based on our review of the record, we cannot find that the trial court abused its discretion.
II
Defendants next contend the trial court erred in denying their motions for a directed verdict and judgment notwithstanding the verdict on plaintiffs' claim for fraud. In denying defendants' motion for a directed verdict, the trial court ruled that "there is evidence that a jury could find the defendant Donald Larson concealed a material fact, to wit, the license limitation and the gutter work as testified by witnesses for the plaintiff; that the concealment could have deceived the plaintiffs. That's for the jury to say and determine. And whether or not there was intent, again I think that's enough for the jury to say."
The standards of review are the same for a ruling on a motion for a directed verdict and for a ruling on a motion for judgment notwithstanding the verdict: this Court must examine all the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference. Hawley v. Cash, 155 N.C. App. 580, 582, 574 S.E.2d 684, 686 (2002). The trial court correctly denies a motion for a directed verdict ifthere is more than a scintilla of evidence supporting each element of the non-movant's claim. Id.
To recover for fraud, a plaintiff "must present evidence tending to show (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) which was relied upon and which resulted in damages to the injured party." Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 663, 464 S.E.2d 47, 57 (1995). The reliance must be reasonable. State Properties, LLC v. Ray, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002), disc. review denied, 356 N.C. 694, 577 S.E.2d 889 (2003). Our review of the record reveals plaintiffs presented "more than a scintilla" of evidence on each element of fraud. Hawley, 155 N.C. App. at 582, 574 S.E.2d at 686.
1. False Representation or Concealment
In denying the motion for a directed verdict, the trial court pointed to two areas of potential concealment or misrepresentation: the limited nature of Mr. Larson's license and the inadequacy of the gutter downspouts. On appeal, the parties have likewise limited their analysis to these two areas.
The contract addendum expressly "represent[ed] and certifie[d]" that Mr. Larson was a "duly licensed general contractor," even though N.C. Gen. Stat. § 87-10(a) limited him toprojects with a value of no more than $250,000. Plaintiffs contend that this assertion was fraudulent since their house's value exceeded $250,000 and defendants, as a result, were not licensed to act as a general contractor on that project. Defendants argue that there was no misrepresentation or concealment because the house's "value" was actually the cost of construction, which defendants claim was below $250,000.
Defendants' argument is, however, based solely on their own evidence and requires drawing inferences from the evidence in their favor, thereby turning the standard of review on its head. Although the parties debate the proper interpretation of the word "value" in N.C. Gen. Stat. § 87-10(a), we need not resolve that issue here, for plaintiffs offered evidence that defendants represented to Central Carolina Bank that they expected "a total construction cost of $300,000" and ultimately obtained construction loans totalling $352,000. While defendants provide various explanations for the disparity in figures, whether those explanations were credible was a question for the jury.
With respect to the gutter system on the house, plaintiffs offered evidence that a subcontractor told Mr. Larson that two gutter downspouts were insufficient on a house of that size, but defendants did not disclose this fact to plaintiffs. Defendants point to their own evidence that additional gutter downspouts wereunnecessary and argue that it was "an everyday judgment call." Because plaintiffs offered expert testimony and testimony from the gutter subcontractor that this was not a matter about which there could reasonably be disagreement, it was up to the jury to decide whether the gutters involved simply a difference in professional judgment.
2. Reasonably Calculated to Deceive/Intent to Deceive
With respect to the requirement (1) that the misrepresentation/concealment be reasonably calculated to deceive and (2) that defendants act with an intent to deceive, defendants make identical arguments. A concealment or misrepresentation is "reasonably calculated to deceive" when there is "a false representation positively made by one who ought in the discharge of his duty to have known the truth and who is consciously and recklessly ignorant whether it be true or false . . . ." Atkinson v. Charlotte Builders, Inc., 232 N.C. 67, 68, 59 S.E.2d 1, 1 (1950). "`[I]ntent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence[;] it must ordinarily be proven by circumstantial evidence, i.e., by facts and circumstances from which it may be inferred.'" State v. Griffin, 319 N.C. 429, 434, 355 S.E.2d 474, 477 (1987) (quoting State v. Hudson, 280 N.C. 74, 77, 185 S.E.2d 189, 191 (1971), cert. denied, 414 U.S. 1160, 39 L. Ed. 2d 112, 94 S. Ct. 920 (1974)). Plaintiffs presented circumstantial evidence that defendants' statements about Mr. Larson's license limitation were intended and reasonably calculated to deceive. Although defendants provided the bank with a "total construction cost" estimate of $300,000, defendants stated on the building permit application that the cost of construction would be $220,000. Orange County Building Inspector Don Knight testified that had defendants indicated on the application that the construction cost was more than $250,000, the county would not have issued the permit. In addition, while the New Construction Addendum provided a space for defendants to write their "North Carolina contractor's license number and type," defendant left the space blank. Defendants suggest that the omission was an oversight, but a jury could reasonably view it as an intentional effort to avoid discovery of the license limitation, especially in light of other evidence presented by plaintiffs indicating that defendants, in violation of the law, had - six months earlier - failed to disclose a pending lawsuit in Mr. Larson's 1999 license renewal application.
With respect to the gutters, plaintiffs offered evidence that the subcontractor told defendants that two gutter downspouts were inadequate, but defendants refused to do anything because it would affect the already poured driveway. A jury could conclude from this evidence that defendants not only knew that the downspoutswere inadequate, but intentionally chose not to notify plaintiffs in order to cut costs. Defendants argue again that the downspouts represent a disagreement over a judgment call and the nondisclosure, therefore, cannot be viewed as calculated to deceive or intentional. Based on plaintiffs' evidence, however, the jury was entitled to reject this argument.
3. Actual Deception/Reasonable Reliance
Defendants contend that the record "is devoid" of evidence of reasonable reliance with respect to Mr. Larson's license. Defendants do not dispute that plaintiffs were in fact unaware of the true state of Mr. Larson's license. They argue instead that plaintiffs unreasonably relied upon defendants' representations about Mr. Larson's license. The gist of their argument is that plaintiffs failed to make a reasonable inquiry about Mr. Larson's license status.
Ordinarily, the question whether an actor is reasonable in relying on the representations of another is a matter for the finder of fact. Olivetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 544, 356 S.E.2d 578, 584 (1987). It is only in cases where a party "must have known the truth" that the trial court may find that a plaintiff's reliance was unreasonable as a matter of law. Johnson v. Owens, 263 N.C. 754, 758, 140 S.E.2d 311, 314 (1965). As the Johnson Court explained: Just where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine. . . . In close cases, however, we think that a seller who has intentionally made a false representation about something material, in order to induce a sale of his property, should not be permitted to say in effect, "You ought not to have trusted me. If you had not been so gullible, ignorant, or negligent, I could not have deceived you." Courts should be very loath to deny an actually defrauded plaintiff relief on this ground.
Id.
Defendants point to Dr. Shafman's testimony that he was concerned about a blank line in the contract where Mr. Larson's license number should have been recorded and argue that plaintiffs' failure to resolve this concern shows they were unreasonable in their reliance. Ms. Donlon testified, however, that even if Mr. Larson's license number had been on the contract or plaintiffs had noticed it on the permit application, the number would have been meaningless to plaintiffs because they were unaware of the state's tiered licensing system and never suspected Mr. Larson was not licensed to perform the work for which he held himself out. This testimony was corroborated by Dr. Efird who explained that he likewise did not investigate Mr. Larson's license because he did not know anything about licensing when he bought his house. Based on this evidence, the jury could conclude that it was notunreasonable for plaintiffs to accept defendants' representation that Mr. Larson was duly licensed without further investigation.[1]
4. Injury
Defendants argue that the general contractor license limitations are unrelated to a contractor's education, skill and experience, and therefore any misrepresentation regarding Mr. Larson's license did not actually injure plaintiffs. Our Supreme Court has, however, specifically held that contractor license limitations exist to provide "protection to the public from fraud, incompetence, and irresponsibility . . . ." Brady v. Fulghum, 309 N.C. 580, 584, 308 S.E.2d 327, 331 (1983). See also Sample v. Morgan, 311 N.C. 717, 722, 319 S.E.2d 607, 610-11 (1984) ("Clearly the statute contemplates a differing level of expertise for those applying for and receiving a license in the three enumerated categories. In enacting this statute, the legislature reasonably determined that as the cost of a structure increased, there would be additional demands of expertise and responsibilities from the contractor."); Ar-Con Constr. Co. v. Anderson, 5 N.C. App. 12, 20, 168 S.E.2d 18, 23 (1969) (licensing provisions "should be considered an important, and not merely a perfunctory, requirement in order to accomplish the protective public purpose of thestatute").
Consistent with Brady, the trial court instructed the jury that "[t]he laws requiring licensing of general contractors were enacted by our legislature to protect the public from fraud, incompetence, and irresponsibility." The jury was free to conclude that plaintiffs were injured when they were misled into believing that a fully licensed general contractor was building their home, with the license's representation of competence, responsibility, and legitimacy, especially in light of plaintiffs' evidence that the resulting house had major structural defects.[2]
In short, plaintiffs presented evidence sufficient to go to the jury on each element of fraud relating to Mr. Larson's license status and the gutter defect. The trial court properly denied the motion for a directed verdict and the motion for judgment notwithstanding the verdict.
III
Defendants contend the trial court erred in denying their request that the jury be instructed that any defects of which plaintiffs had notice when they took possession of the house could not be considered in the calculation of damages. Defendants argue that the proposed instruction, based on a pattern jury instruction,was supported by evidence that plaintiffs took possession with actual or constructive notice of one or more defects.
Although the record indicates that defendants submitted the requested instruction to the court in writing, they did not object to omission of the instruction from the court's proposed charge either during the charge conference or after the charge was given. In fact, when the court specifically asked during the charge conference whether the parties had additional instructions they wished to propose, defendants did not request that the instruction be added to the charge.
Because of defendants' failure to object, any error was not properly preserved for review. See N.C.R. App. P. 10(b)(2) ("A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection . . . ."). This assignment of error is overruled.
IV
Lastly, defendants contend the trial court erred in not granting their Rule 59 motion for a new trial or amendment of the verdict on the grounds that the jury's fraud damages award was excessive, the result of a failure to follow the court's instructions, or influenced by passion or prejudice. When thetrial court denies a motion based on the argument that the award was excessive or unsupported by the evidence, we review that decision for abuse of discretion. Haas v. Kelso, 76 N.C. App. 77, 82, 331 S.E.2d 759, 762 (1985) (affirming denial of Rule 59 motion).
Defendants base their argument solely on the fact that the jury awarded $208,000 for fraud, but only awarded $95,295 for breach of warranty. Defendants contend that the awards should have been identical. Defendants have overlooked the fact that the trial court instructed the jurors to use a different measure for breach of warranty damages than for fraud damages. We note that defendants have not assigned error to the damages instructions apart from that discussed above.
The court instructed the jury that damages for breach of warranty should be calculated based on "the reasonable market value of the house . . . at the time of the possession if it had been constructed so that it met the standard of workmanlike quality prevailing at the time and place of construction" minus the reasonable market value of the house "at the time and place of construction in its actual condition," plus any incidental or consequential damages. The trial court further instructed the jury, with respect to the breach of warranty claim, that it could alternatively choose to award the reasonable cost of the repairsnecessary to meet the standard of workmanlike quality at the time and place of construction.
On the other hand, with respect to the fraud claim, the court instructed:
[I]f you have found fraud on the part of the defendants, then the damages for which the plaintiff would be entitled to recover for the fraud would be the difference between the actual value of the home and the value of the home as represented by the defendants. . . .
. . . .
In arriving at the difference in the value of the home as represented by the defendants and its actual value, you may consider in reaching your answer the reasonable cost of repairing the home so as to bring it to conformity with the defendant's representation.
In other words, with respect to the breach of warranty claim, the jury was to base damages on the market value of a house of "workmanlike quality," while for fraud damages, the jury was to start with the value of the home as represented by defendants. Based on the evidence, the jury could reasonably have decided that defendants had promised a more valuable home than "workmanlike." In addition, the jury was instructed that it could choose to calculate the breach of warranty award by the repair costs necessary to achieve "workmanlike quality" instead of by determining the difference in market value. The fraud instructionsuggested that repair costs to achieve the represented value were one aspect of the award.
Defendants argue: "Considering that the jury returned a verdict under the issue of breach of warranty in the amount of $95,295.00, it is clear that the facts of the case showed repair costs and damages from the alleged breach of contract to be in the range of $95,000." Based on the jury instructions, the verdict means only that the repair costs and damages with respect to a house of "workmanlike quality" were approximately $95,000. The jury could - and apparently did - conclude that difference in value between what defendants promised and what they provided was considerably more.
The jury's verdict is within the range supported by the evidence. Dr. Shafman testified that the house "is probably worth $200,000," while plaintiffs paid $438,000 when they bought the house. Further, plaintiffs' canceled checks, estimates, and testimony suggested that the cost of repairs, relocation, and storage was over $210,000. On the one hand, the jury could have determined that the house was worth approximately $230,000 - just over the construction cost value placed on it by defendants in the building permit application. Or, the jury could have refused to award some small portion of the total repairs and expenses. See, e.g., Pelzer v. United Parcel Serv., Inc., 126 N.C. App. 305, 311-12, 484 S.E.2d 849, 853 (it is for jury to determine extent of injury and amount of damages), disc. review denied, 346 N.C. 549, 488 S.E.2d 808 (1997).
As this Court stated in Blow v. Shaughnessy, 88 N.C. App. 484, 494, 364 S.E.2d 444, 449 (1988) (internal citations omitted) (quoting Smith v. Beasley, 298 N.C. 798, 801, 259 S.E.2d 907, 909 (1979)):
[W]here there is no stipulation of damages, the testimony of witnesses becomes evidence for the sole province of the jury to consider. Thus, "[i]n weighing the credibility of the testimony, the jury has the right to believe any part or none of it." In the case sub judice, there was no stipulation of damages made by either party. The jury weighed the evidence before it on the issue of damages, and arrived at a figure, in its view, to be appropriate [sic]. Consequently, in the trial judge's discretion, such an award of damages by the jury did not require granting plaintiffs' motion for a new trial. Therefore, upon thorough review of the record, we hold that the trial judge's denial of plaintiffs' motion for a new trial on the issue of damages did not amount to a substantial miscarriage of justice and was therefore not a manifest abuse of discretion.
Here, given the trial court's instructions and the evidence before the jury, we cannot say that the trial court abused its discretion in determining that the fraud award was supported by the evidence and denying defendants' motions.
V
Plaintiffs submitted four cross-assignments of error, asserting the trial court erred in (1) granting defendants' motion for directed verdict on the claim of unfair and deceptive trade practices, (2) denying plaintiffs' motion to treble the damages awarded by the jury, (3) denying plaintiffs' Rule 59 motion to amend the judgment, and (4) failing to conduct an evidentiary hearing on plaintiffs' claim for attorneys' fees, pursuant to N.C. Gen. Stat. § 75-16.1 (2003). Plaintiffs did not, however, file an appellant's brief in support of their cross-assignments of error. Because plaintiffs' arguments regarding the Chapter 75 claim do not provide an alternative basis in law for supporting the judgment appealed by defendants, but rather argue for reversal in part, plaintiffs were required to raise their arguments as a cross-appeal. Williams v. N.C. Dep't of Econ. & Cmty. Dev., 119 N.C. App. 535, 539, 458 S.E.2d 750, 753 (1995). A cross-appellant must file an appellant's brief and may not simply argue the cross-appeal issues in the appellee's brief. When, as here, a cross-appellant fails to file an appellant's brief, the cross-appeal is deemed abandoned under N.C. R. App. P. 13(c). Dare County Bd. of Educ. v. Sakaria, 127 N.C. App. 585, 587, 492 S.E.2d 369, 371 (1997). See also N.C.R. App. P. 13(c) ("If an appellant fails to file and serve his brief within the time allowed, the appeal may be dismissed onmotion of an appellee or on the [C]ourt's own initiative."). Because of the fundamental nature of the trial court's error of law, however, this Court will exercise its discretion to suspend the rules pursuant to N.C.R. App. P. 2 and consider plaintiffs' arguments.
We first consider the trial court's grant of a directed verdict. Our Supreme Court has held that "a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred." Bhatti v. Buckland, 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991). See also Hardy v. Toler, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975) ("Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts."); State Properties, 155 N.C. App. at 74, 574 S.E.2d at 187 ("a finding of fraud constitutes a violation of N.C. Gen. Stat. § 75-1.1"). Since the trial court properly concluded that plaintiff had offered sufficient evidence of fraud to defeat the motion for a directed verdict, the court should likewise have denied the motion as to the unfair and deceptive trade practices claim.
Defendants urge that upon reversal of the directed verdict, the Court should remand to allow a jury to decide what acts were unfair and deceptive. In Chapter 75 cases, a jury determines whether a particular act or practice has occurred, but it is a question of law for the court to decide whether that specific actor practice constitutes a violation of N.C. Gen. Stat. § 75-1.1. Hardy, 288 N.C. at 309, 218 S.E.2d at 346.
Here, once the jury found that defendants committed fraud, it was established that "defendant's acts were `unfair or deceptive.'" Bhatti, 328 N.C. at 244, 400 S.E.2d at 443 (quoting Hardy, 288 N.C. at 309, 218 S.E.2d at 346). At that point, "the burden shifts to the defendant to prove that he is exempt from the provisions of N.C.G.S. § 75-1.1." Id. at 243-44, 400 S.E.2d at 442. For example, a defendant may prove that his acts were not "in or affecting commerce" or that he fell within the statute's express exemptions contained in N.C. Gen. Stat. § 75-1.1.(b) & (c). Id. at 244, 400 S.E.2d at 442-43.
Defendants do not contend that any of the express exemptions apply or that their sale of the house to plaintiffs in the course of their business was not "in or affecting commerce." See Davis v. Sellers, 115 N.C. App. 1, 8, 443 S.E.2d 879, 884 (1994) ("A person engaged either directly or indirectly in the sale of real estate is engaged in commerce within the meaning of G.S. 75-1.1."), disc. review denied, 339 N.C. 610, 454 S.E.2d 248 (1995). Because defendants did not prove that they were exempt from Chapter 75, the trial court should have concluded, following the jury's fraud verdict, that defendants violated N.C. Gen. Stat. § 75-1.1 and trebled the fraud damages. "Once a violation of Chapter 75 isfound, treble damages must be awarded." Id. at 9, 443 S.E.2d at 884.
In Davis, this Court held that the trial court had properly granted a directed verdict as to a Chapter 75 claim, despite the jury's finding of fraud, because the plaintiff had failed to prove that "defendants were anything other than private homeowners selling their home," id. at 7, 443 S.E.2d at 883, and, therefore, their acts were not "in and affecting commerce." N.C. Gen. Stat. § 75-1.1(a). Subsequently, the plaintiff uncovered evidence establishing that defendants were not acting as private homeowners, but rather had earned a referral fee for the sale of the house. This Court held that the trial court should have granted the plaintiff's Rule 60(b) motion to set aside the Chapter 75 directed verdict and entered judgment trebling the fraud damages awarded to the plaintiff:
[D]efendant wife's receipt of the referral fee brings defendants' transaction within the scope of G.S. 75-1.1. A plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred in violation of G.S. 75-1.1. Once a violation of Chapter 75 is found, treble damages must be awarded. Since the jury found in favor of plaintiff on her fraud claim, plaintiff is entitled to treble damages. Accordingly, we remand to the trial court to enter judgment trebling plaintiff's damages on the jury verdict.
Id. at 8-9, 443 S.E.2d at 884 (internal citations omitted). Under the authority of Davis, because we find no error in the jury's fraud verdict, we remand to the trial court to enter judgment trebling plaintiff's damages on the fraud claim. Defendants concede that if plaintiffs prevail on the Chapter 75 claim, plaintiffs are also entitled to an evidentiary hearing on attorneys' fees. See id. (noting that upon remand, the trial court may enter an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1). We, therefore, also remand for a hearing on plaintiffs' entitlement to attorneys' fees.
Affirmed in part; no error in part; remanded in part.
Judges HUDSON and THORNBURG concur.
Report per Rule 30(e).

As to the gutters, defendants rely on their contention addressed above that there was simply a difference of opinion.

Defendants do not suggest that there was a lack of injury with respect to the gutters.