STATE OF NORTH CAROLINA v. RONALD JUNIOR COTTON

No. 460A90

(Filed 5 September 1991)

**Criminal Law §§ 39, 85.2 (NCI3d)— misconduct toward co-employees—competency for rebuttal—race and ages of co-employees—harmless error**

In this prosecution for two rapes, two burglaries and two sexual offenses, the State was properly allowed to rebut testimony by defendant's employer that defendant was a good employee by questioning the employer about defendant's misconduct toward waitresses at the employer's restaurant by touching various parts of their bodies and telling them dirty jokes. Assuming that the ages and race of the waitresses was irrelevant to rebut evidence that defendant was a good employee, the admission of testimony that defendant particularly bothered two white waitresses of approximately the same ages as the victims was harmless error since it cannot be said that a different result would have been reached at trial had this testimony not been admitted. Moreover, the trial court did not abuse its discretion in finding that the danger of unfair prejudice did not substantially outweigh the probative value of this testimony.

**Am Jur 2d, Evidence §§ 340, 344.**

Justice FRYE dissenting.

Chief Justice EXUM joins in this dissenting opinion.

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 99 N.C. App. 615, 394 S.E.2d 456 (1990), affirming judgment imposing life in prison plus fifty-four years entered by *McLelland, J.*, at the 9 November 1987 Session of Superior Court, ALAMANCE County. Heard in the Supreme Court 11 March 1991.

The defendant was convicted of first degree burglary, first degree rape, and first degree sexual offense. This Court ordered a new trial in *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987), because of the exclusion of evidence that another rape had occurred under similar circumstances and there was evidence that another person had committed the other rape.

STATE v. COTTON

[329 N.C. 764 (1991)]

When the case was returned for trial the defendant was indicted for the other rape and attending crimes. The cases were consolidated for trial. The defendant was tried for two charges of first degree rape, two charges of first degree burglary, and two charges of first degree sexual offense. Two women testified at the trial. Each of them testified that the defendant broke into her house, raped her, and committed other sexual offenses in the early morning of 29 July 1984. The defendant was found guilty of first degree rape, second degree rape, first degree sexual offense, second degree sexual offense, and two charges of first degree burglary.

The Court of Appeals found no error with one judge dissenting. The defendant appealed to this Court.

*Lacy H. Thornburg, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for defendant appellant.*

WEBB, Justice.

The dissent in the Court of Appeals and the argument of the defendant on this appeal deal with testimony elicited by the State on redirect examination of a witness for the State. The State called the defendant's employer who operated a seafood restaurant. On cross-examination the employer was asked if the defendant was a good employee. The employer answered in the affirmative. On redirect examination the following colloquy occurred:

Q. Mr. Byrum, Mr. Moseley asked you previously about whether or not Mr. Cotton was a good employee of yours; is that correct?

A. Yes, sir.

Q. Now, during the time that Mr. Cotton was in your employ, did you have occasion to personally witness any problems with Mr. Cotton, while he was working for you?

A. Well, the one problem was with the waitress [sic]; it wasn't with doing his job.

Q. What kind of problem was it with the waitresses, Mr. Byrum?

A. He was always messing with them.

Q. How do you mean, "messing with them" Mr. Byrum?

A. Touching them.

Q. Touching them where?

A. On their shoulders, and their bodies, and their rears, and telling dirty jokes.

. . . .

Q. All right; and how old were the waitresses, Mr. Byrum?

A. They usually run like high school up to 50, 55.

Q. So, well, in particular, at the time that he was working for you, you had waitresses there between the ages of what, would you say?

A. 18 and 55.

Q. And, in particular, the waitresses that you—that he was touching on the rear end and touching on the shoulder; how old were they?

A. Between the same ages; it was not just—

A. It was not just one waitress; it was just about all of 'em.

. . . .

Q. And did that also pertain to all of the waitresses, and not just one or two?

A. Well, it was two, more than anybody else.

Q. All right, and do you recall the ages of those two waitresses?

A. One was like 18; and one was 47, I believe.

. . . .

Q. What was the race of these waitresses?

A. White.

The Court of Appeals, relying on State v. Albert, 303 N.C. 173, 277 S.E.2d 431 (1981), and State v. Fultz, 92 N.C. App. 80, 373 S.E.2d 445 (1988), held that when the defendant elicited testimony on the cross-examination of his employer that he was a good employee, the State was entitled to rebut this testimony by

STATE v. COTTON

[329 N.C. 764 (1991)]

demonstrating his weakness as an employee by showing his miscon-
duct with the waitresses. The Court of Appeals held that the superior
court went too far and committed error when it allowed testimony
as to the ages and race of the waitresses as this testimony was
irrelevant in rebutting evidence that he was a good employee.
The Court of Appeals held this was harmless error in light of
the strong evidence against the defendant and his own equivocal
testimony. Judge Johnson dissented on the ground that the evidence
was not as strong as the majority contended and there was a
reasonable possibility that this erroneously admitted testimony could
have contributed to the conviction.

In this Court the defendant argues that the evidence against
the defendant was not strong and the erroneous admission of evidence
that the defendant had been offensive to women of the same age
and race as the victims was prejudicial. He also argues that, assum-
ing the testimony of his conduct with the waitresses had some
probative value, it should have been excluded pursuant to N.C.G.S.
§ 8C-1, Rule 403.

Assuming it was error to admit testimony as to the ages and
race of the waitresses, we agree with the Court of Appeals that
the defendant has not demonstrated he was prejudiced by this
testimony. In order to show that erroneously admitted testimony
is prejudicial, the defendant must show that had it not been admit-
ted there is a reasonable possibility a different result would have
been reached at the trial. State v. Martin, 322 N.C. 229, 367 S.E.2d
618 (1988); State v. Milby, 302 N.C. 137, 273 S.E.2d 716 (1981);
N.C.G.S. § 15A-1443 (1988). The Court of Appeals held that the
evidence against the defendant was so strong there was not a
reasonable possibility that a different result would have been reached
at the trial. We place our holding on a different ground.

We begin our analysis by noting that the State was properly
allowed to question the defendant's employer about the defendant's
peccadilloes on the job after his employer had testified he was
a good worker. State v. Albert, 303 N.C. 173, 277 S.E.2d 431.
The thrust of the dissent and the defendant's argument in this
Court is that by identifying two of the waitresses on whom the
defendant made improper advances as white that this could have
inflamed the jury because the defendant, a black, was being tried
for raping two white women. We note that the defendant's employer
in his testimony did not limit the defendant's molestations to the

two white waitresses. He testified, "[i]t was not just one waitress, it was just about all of 'em" and "[w]ell, it was two, more than anybody else."

From the testimony of defendant's employer we can conclude the defendant had bothered virtually all the waitresses and particularly two white ones. We can assume the race of the two waitresses was irrelevant to rebut otherwise proper testimony and should not have been admitted. Irrelevant testimony is not always prejudicial. In this case the prejudicial effect of this testimony should have been slight. It was to the effect that the defendant bothered all the waitresses and in particular two white waitresses. We cannot say it has been demonstrated that had this testimony not been admitted a different result would have been reached at the trial. We hold the admission of this testimony was harmless error.

The defendant also contends that the admission of this testimony violated N.C.G.S. § 8C-1, Rule 403 which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Under this rule the court can exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value. *State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986). Whether to exclude evidence under this section is a matter within the discretion of the trial judge. *State v. Schultz*, 88 N.C. App. 197, 362 S.E.2d 853 (1987), *aff'd*, 322 N.C. 467, 368 S.E.2d 386 (1988).

The defendant argues that whether he was a good worker is collateral at best. He says that to allow testimony of his actions with women, under the guise of proving he was not a good employee, allows very damaging testimony which has little probative value in the case.

A new trial will be ordered for an abuse of discretion in not excluding testimony pursuant to Rule 403 only upon a showing that the "ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Penley*, 318 N.C. 30, 41, 347 S.E.2d 783, 789 (1986), *quoting*, *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986). We cannot say that under this test it was error for the court not to exclude this

STATE v. COTTON

[329 N.C. 764 (1991)]

testimony. The defendant elicited testimony that he was a good employee. The court allowed the State to elicit testimony to rebut this evidence. We cannot hold this was not the result of a reasoned decision.

This assignment of error is overruled.

Affirmed.

Justice FRYE dissenting.

I disagree with the majority's conclusion that the testimony about defendant's behavior towards the two waitresses at work was not so prejudicial as to require a new trial. The majority assumes that it was error to admit the testimony of defendant's employer because the race of the two waitresses was irrelevant to rebut otherwise proper testimony and then concludes that the admission of this testimony was harmless error. I agree with the Court of Appeals' conclusion that "the *ages* and the *race* of the waitresses was not relevant to rebutting the defendant's evidence that he was a good employee." *State v. Cotton*, 99 N.C. App. 615, 394 S.E.2d 456 (1990) (emphases added). However, I agree with Judge Johnson's dissent in the Court of Appeals that this error was not harmless because the evidence of defendant's guilt in this case is not so overwhelming as to remove any reasonable possibility that if this testimony had not come in, a different result would have been reached at trial.

A review of the evidence in this case is crucial to a resolution of this issue since we must determine if the error was prejudicial. The majority opinion sets out the relevant testimony given by defendant's employer concerning defendant's behavior as exhibited towards two specific waitresses while he was working at the restaurant. That testimony reveals the employer testified that while defendant "messed" with all the waitresses, "it was two more than anybody else." "Messing" with the waitresses consisted of defendant's touching these two waitresses on various parts of their bodies, telling them dirty jokes, and talking about sex. The two waitresses who were the targets of defendant's actions were eighteen and forty-seven years old, and both were white. The victims in the present case were ages twenty-two and forty-one, and both were white.

The evidence concerning defendant's identity is less than over-whelming. As Judge Johnson points out in his dissent:

> First, as to victim one, the evidence also tended to show that she was nearsighted and was not wearing her glasses during the attack upon her, and the only illumination in the room was from a street lamp filtering through her blinds; that during the time her assailant was in her presence he made efforts to keep her from seeing his face; that upon view-ing a photographic lineup on 31 July containing six photos, one of which was of defendant, she initially chose two pictures from the array, one of which depicted defendant. After examin-ing those two pictures for a number of minutes, she told the investigating officer that defendant's photo "looks most like him." On 8 August, she viewed a physical lineup consisting of seven men. Defendant was the only participant whose pic-ture had been among those in the photographic array. Again, the victim was instructed to choose the one that looked the most like her assailant. After viewing the participants for a while, she told the officer that it was between participants numbers four and five. She then stated that number five, de-fendant, "looks the most like him."

*State v. Cotton*, 99 N.C. App. at 624-25, 394 S.E.2d at 461 (Johnson, J., dissenting). Furthermore, the physical evidence gathered at this victim's home, semen stains on her bed sheets, was inconsistent with defendant's blood type.

> As to the second victim, the evidence also tended to show that on the two occasions that the assailant entered her house he directed the beam of a flashlight in her face; that other than the flashlight beam the only source of light in the house was from a television set which was not on when her attacker entered the second time. On 31 July, the second victim viewed the same photographic lineup of six photos, including defend-ant's photo, that the first victim had viewed. Likewise, she was told to pick out the photo of the individual who most resembled her assailant. She failed to pick out anyone from this array. When she viewed the physical lineup on 8 August 1984, and picked out a Kenneth Watkins as her attacker, she thereafter asked the officer conducting the lineup if she had picked out the right person. On cross-examination she stated that she tried to pick out the right man, but had made a mistake.

*State v. Cotton*, 99 N.C. App. at 624, 394 S.E.2d at 461 (Johnson, J., dissenting). In addition, the second victim was present at the first trial but did not indicate until shortly before the second trial, some three and one-half years after the incident, that she could identify defendant as her assailant.

As with the first victim, the physical evidence gathered at the scene of the second incident was inconsistent with defendant's blood type. At the home of the second victim, the officers recovered a pair of the victim's panties which had semen stains, and these stains were inconsistent with defendant's blood type. The evidence at the second victim's home indicated that the assailant had broken an outside light on the porch when breaking into the home, and the police gathered a sample of fresh blood found on the storm door at the victim's home. This blood sample was likewise inconsistent with defendant's blood type. Thus, there was no evidence gained from the laboratory testing of the samples collected at the scene of either incident linking defendant with these two attacks.

Under the circumstances, I conclude that there is a reasonable possibility that, had the error not occurred, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1988). Thus, I find the error prejudicial.

Chief Justice EXUM joins in this dissenting opinion.