IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-689

 Filed: 20 June 2017

Burke County, Nos. 15 CRS 315–16

STATE OF NORTH CAROLINA

 v.

SAMMY LEE HENSLEY, SR.

 Appeal from judgment entered 28 October 2015 by Judge Nathaniel J. Poovey

in Burke County Superior Court. Heard in the Court of Appeals 18 April 2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kimberly
 Randolph, for the State.

 Cooley Law Office, by Craig M. Cooley, for defendant-appellant.

 BRYANT, Judge.

 Where the trial court did not violate Rule 106 or otherwise abuse its discretion

by admitting into evidence a detective’s handwritten notes after defendant opened

the door to this evidence during cross-examination, we find no error.

 The State’s evidence tended to show that Danny Stanley purchased a .40-

caliber Glock handgun from defendant Sammy Lee Hensley Sr. in “roughly October

of [20]13.” The transaction occurred in a trailer belonging to defendant’s mother.

Defendant personally handed the gun to Stanley, and Stanley paid defendant

$300.00. During the exchange, defendant assured Stanley that “the gun was clean,

wasn’t stolen.” Later, however, defendant told Stanley that he “ ‘stole [the gun] out
 STATE V. HENSLEY

 Opinion of the Court

of a car in Louisiana.’ ” Stanley contacted a friend in the Burke County Sheriff’s

Office and “asked him if he would run that gun to see if it was stolen.” The friend

advised him that the gun was stolen and referred the matter to Detective Melanie

Robinson in the Criminal Investigations Division.

 On 3 October 2014, Stanley met with Detective Robinson and surrendered the

handgun purchased from defendant. Detective Robinson traced the gun’s serial

number through the National Criminal Information Center database and confirmed

the gun had been reported stolen in Louisiana. Though “very reluctant” to reveal

how he had obtained the weapon, Stanley eventually told Detective Robinson that he

bought it from “Sammy Hensley, Sr.”

 Detective Robinson interviewed defendant at the Sheriff’s Office on 17 October

2014 after he was arrested on unrelated charges. During the course of the interview,

defendant acknowledged having “ ‘sold a gun to Sam [Stanley] or his father, Dan.’ He

didn’t remember which one.” Defendant reviewed and signed a written statement

prepared by Detective Robinson on the afternoon of 17 October 2014, stating as

follows:

 Back towards the middle of 2013, . . . Danny [Hall] came to
 me & he had a couple of guns – a Glock & a .38 [c]aliber
 pistol. Danny asked me to help him out & sell the gun cause
 he needed money for morphine for his pain. I called up Sam
 Stanley & he asked his Daddy. Then I sold the gun to them
 for Danny & I didn’t keep any of the money. I don’t
 remember what they paid for it. The reason I don’t
 remember is it was so long ago. I also didn’t take a cut

 -2-
 STATE V. HENSLEY

 Opinion of the Court

 because Danny was my friend & would give me morphine
 for my leg when I was out of my meds. . . .

 After obtaining defendant’s statement, Detective Robinson contacted Stanley

and asked if he would be willing to give a written statement now that defendant had

admitted selling him the gun. Stanley met Detective Robinson at the Sheriff’s Office

on 23 October 2014 and signed a written statement describing the transaction.

 At trial, the State presented two witnesses—Detective Robinson and Danny

Stanley. Detective Robinson’s direct examination was limited mainly to her

investigation of the case, including discussions with Stanley, and the fact that she

talked to defendant, but not the substance of her conversation with defendant. At

that point, the State noted that it had completed its questioning of Detective Robinson

“subject to being . . . allowed to recall her after Mr. Stanley’s testimony to corroborate

his statement, if in fact it [did corroborate his statement], and also to introduce what

the defendant told her . . . .” Defense counsel noted no objection to the State

proceeding in that manner.

 Defense counsel then proceeded to conduct an extensive cross-examination of

Detective Robinson, including questions about three pages of handwritten notes she

had taken during her interview with defendant on 17 October 2014:

 Q. The bottom of page 1, the last sentence, what’s
 written in your notes?

 A. (As read) “Denies all involvement with any guns.”

 -3-
 STATE V. HENSLEY

 Opinion of the Court

 Q. And this is [defendant’s] statement to you,
 correct?

 A. This is his statement prior to me questioning him
 about this case. I interviewed him on multiple cases that
 day.

 Q. So but if he denies any involvement with guns,
 you didn’t put that in his statement, though, that you
 wrote, right?

 ....

 A. It -- No, I did not. It did not have any bearing on
 this statement as I was writing it. He, he made -- Whenever
 I made this note, everything’s chronological. When I take
 my notes, I take them in chronological order. And as you
 review them, you will be able to follow and see what case
 we were discussing as I was writing it. And I had not yet
 began [sic] to question him in reference to this firearm
 when he made that comment.

 Q. Well, let’s talk about when you started
 questioning about this firearm. . . .

 Later, on redirect, the State asked Detective Robinson about her reference to

defendant denying “all involvement with any guns” including the gun sold to Stanley:

 Q. [Defense counsel] pointed you out to certain
 segments of both . . . Stanley’s statement and [defendant’s]
 statement.

 A. Yes, sir.

 Q. At one point he asked you to look at handwritten
 notes that you took from . . . defendant. And he wanted you
 to specifically read a segment where at the bottom of the
 page he said he denied all involvement with any guns.
 What was that specific question in ref -- or answer in

 -4-
 STATE V. HENSLEY

 Opinion of the Court

 reference to?

 A. When he made that statement to me, that was
 right after he informed me that he was a convicted felon.

 Q. Was it in reference, though, to this gun, this Glock
 .40 caliber 20 -- Model 22 or another gun?

 A. No, sir. It was not in reference to that. It was -- It
 wasn’t in reference to any gun. It was just something that
 came up in the conversation when he was basically telling
 me some of his criminal past.
 . . . When I asked him if he had any guns, he says,
 “No, I don’t mess with” -- something along the lines of, “No,
 I don’t mess with guns. I don’t have any guns.” He did make
 that statement.
 And that’s when I wrote, (as read) “Denies all
 involvement with any guns.” But this was prior -- We
 discussed two other cases before I questioned him about this
 firearm. And this was a statement made early on in the
 interview.

(Emphasis added).

 After Stanley testified, Detective Robinson was recalled to testify and the trial

court admitted, inter alia, three documents into evidence: defendant’s written

statement signed on 17 October 2014, Detective Robinson’s handwritten notes taken

during her interview with defendant that same day, and Stanley’s written statement

signed on 23 October 2014. The documents were then published to the jury by being

read aloud by Detective Robinson.1 Defendant presented no direct evidence at trial.

 1 Stanley’s statement was proffered to corroborate his trial testimony.

 -5-
 STATE V. HENSLEY

 Opinion of the Court

During its deliberations, the jury requested and received paper copies of defendant’s

and Stanley’s written statements, but not Detective Robinson’s notes.

 The jury found defendant guilty of possession of a firearm by a convicted felon.

Upon his guilty plea to attaining habitual felon status, the trial court sentenced him

to an active term of 100 to 132 months. Defendant filed timely notice of appeal from

the judgment.

 _____________________________________________________

 On appeal, defendant claims the trial court abused its discretion by admitting

into evidence certain portions of Detective Robinson’s handwritten notes from his

interview on 17 October 2014. Specifically, defendant contends (I) the prosecutor’s

Rule 106 request was not made contemporaneously with defense counsel’s alleged

misleading or incomplete use of the handwritten notes and further, that those notes

were not relevant to the portion already admitted. Defendant also contends (II) the

probative value of the handwritten notes was substantially outweighed by their

undue prejudice, pursuant to Rule 403. We disagree.

 I. Rule 106

 In challenging the trial court’s decision to admit Detective Robinson’s notes

into evidence, defendant first contends the State’s proffer of the notes failed to satisfy

the contemporaneity requirement of the “rule of completeness” codified in N.C. Gen.

Stat. § 8C-1, Rule 106 (2015):

 -6-
 STATE V. HENSLEY

 Opinion of the Court

 When a writing or recorded statement or part thereof is
 introduced by a party, an adverse party may require him
 at that time to introduce any other part or any other
 writing or recorded statement which ought in fairness to be
 considered contemporaneously with it.

Id. “The purpose of the ‘completeness’ rule codified in Rule 106 is merely to ensure

that a misleading impression created by taking matters out of context is corrected on

the spot, because of ‘the inadequacy of repair work when delayed to a point later in

the trial.’ ” State v. Thompson, 332 N.C. 204, 220, 420 S.E.2d 395, 403–04 (1992)

(quoting United States v. LeFevour, 798 F.2d 977, 981 (7th Cir. 1986)).

 “A trial court’s decision in determining whether an excluded portion ought to

be admitted under Rule 106 will not be reversed on appeal in the absence of a showing

of an abuse of discretion.” State v. Hall, 194 N.C. App. 42, 50, 669 S.E.2d 30, 36 (2008)

(citing Thompson, 332 N.C. at 220, 420 S.E.2d at 403). “Abuse of discretion results

where the court’s ruling is manifestly unsupported by reason or is so arbitrary that

it could not have been the result of a reasoned decision.” State v. Hennis, 323 N.C.

279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).

 Citing State v. Lloyd, 354 N.C. 76, 552 S.E.2d 596 (2001), defendant observes

that the prosecutor did not seek to introduce the full text of the notes at the time

Detective Robinson was cross-examined about her notation, “Denies all involvement

with any guns.” See id. at 96, 552 S.E.2d at 612–13 (addressing the defendant’s Rule

106 argument).

 -7-
 STATE V. HENSLEY

 Opinion of the Court

 In Lloyd, the trial court refused to allow the defendant to introduce previously-

excluded portions of his statement to police after “other parts of [his] police statement

had been introduced by the State.” Id. at 96, 552 S.E.2d at 613. Our Supreme Court

rejected the defendant’s claim that the exclusion of the additional portions of his

statement violated Rule 106, explaining that the “defendant’s argument fails, because

he did not seek to introduce the excluded parts of his police statement

contemporaneously as required by statute, but instead sought to introduce them on

rebuttal.” Id. (citation omitted).

 The Lloyd Court upheld the trial court’s decision to exclude evidence based on

the contemporaneity requirement of Rule 106. It does not follow that a trial court

would lack the discretion to admit similar evidence under the same circumstances.

See N.C. Gen. Stat. § 15A-1226(b) (2015) (“The judge in his discretion may permit any

party to introduce additional evidence at any time prior to verdict.”); Thompson, 332

N.C. at 220, 420 S.E.2d at 403 (“The standard of review [under Rule 106] is whether

the trial court abused its discretion.” (citation omitted)).

 In the instant case, the transcript shows defense counsel objected when the

prosecutor sought to admit the full text of the notes. On voir dire, defense counsel

acknowledged having cross-examined Detective Robinson about the phrase on the

first page of her notes, “Denies all involvement with any guns.” But when the court

asked for “the grounds of [his] objection,” defense counsel replied, “I would object to

 -8-
 STATE V. HENSLEY

 Opinion of the Court

the whole statement being admitted. I would argue that the probative value of those

-- that other information is outweighed by the extreme prejudice that would be caused

to the defendant.” Defense counsel made no specific Rule 106 objection at trial.

 “Our Supreme Court ‘has long held that where a theory argued on appeal was

not raised before the trial court, the law does not permit parties to swap horses

between courts in order to get a better mount’ in the appellate courts.” State v.

Holliman, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (citations omitted)

(quoting State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5–6 (1996)). Accordingly,

this argument is waived by defendant. See id. at 124, 573 S.E.2d at 686. However,

even if defendant’s Rule 106 argument were properly before us, it would still fail.

 Here, the prosecutor observed that it was defense counsel who first asked

Detective Robinson about her notes, “specifically with that one sentence from the

bottom of page 1.” In order to “put it all into context,” the prosecutor argued that “the

whole thing should be introduced.” The trial court addressed defendant’s objection

as follows:

 THE COURT: . . . I agree with [the prosecutor], that
 you, you opened the door to this, specifically by asking
 [Detective Robinson] about something that was not related
 to this incident on the bottom of page 1.
 Knowing that this was taken in chronological order,
 or should have known that this was taken in chronological
 order, asking her about the specific statement of your client
 “Denies all involvement with any guns,” which was
 unrelated completely to this investigation, I think opens
 the door to things unrelated to this investigation. You can’t

 -9-
 STATE V. HENSLEY

 Opinion of the Court

 ask a question like that, raise the suspicion and the, the
 confusion in the minds of the jury, and then step back and
 hide behind it.

Defense counsel then argued that there were specific parts of the detective’s notes

which were more prejudicial than probative. But the trial court overruled each of

defense counsel’s objections to certain portions of the detective’s notes being read into

evidence.

 After the jury returned to the courtroom, Detective Robinson read aloud the

full first page of her notes:

 (As read) “I didn’t go to court, because I didn’t have
 money. Ryan Willis bought flatscreen TV from me with
 [two] fake hundred dollar bills. Got TV, traded 10 roxies for
 it. Went to Kmart and used bill to try to buy Prilosec.
 Cashier told me it was fake. I left. M.D.P.S. C. Daniels
 came and interviewed me. I told him I got it from Ryan.
 “Jacob told Sam Stanley he and Natalie had stolen
 some guy Rafe’s gun. Me, Jacob, and Sam hung out
 together. Sam’s daddy likes guns. I never saw the gun,
 don’t know what kind it was. Heard Rafe’s daddy was
 pissed and was going to whip his ass.
 “I’m a convicted felon since 1985. I really can’t tell
 you nothing. I wished I could, you know. Thirteen days in
 Albany, New York, for grand theft auto.[”] Stolen from here.
 Caught at restaurant by New York. Boy stole from his
 momma back in ‘85. Denies all involvement with any guns.
 . . .”

(Emphasis added).

 In essence, defendant argues it was error for the trial court to permit the State

to publish to the jury the entirety of Detective Robinson’s handwritten notes non-

 - 10 -
 STATE V. HENSLEY

 Opinion of the Court

contemporaneously with the portion testified to on cross-examination. Defendant’s

reliance on the contemporaneity requirement of Rule 106 is misplaced, particularly

where, as here, defense counsel opened the door to the detective’s notes during cross-

examination and then objected to the admission of the full statement being read to

the jury, arguing that specific portions of the notes were “more prejudicial than

probative.” It was only after defense counsel “opened the door” by taking a portion of

defendant’s statement out of context so as to be misleading that Detective Robinson’s

notes regarding criminal activity that might otherwise be inadmissible were allowed

by the trial court to correct the misleading impression created by defendant. The

trial court’s actions were entirely consistent with the purposes of Rule 106.

 Unlike in Lloyd, a capital murder trial which appeared to span almost a month,

see 354 N.C. at 79–80, 552 S.E.2d at 603, where the Supreme Court rejected

defendant’s Rule 106 argument when he sought to introduce evidence in rebuttal, see

354 N.C. at 96, 552 S.E.2d at 612–13, here, defendant’s trial lasted only two days and

Detective Robinson’s notes were introduced during the State’s direct case. On these

facts, we reject defendant’s claim that the contemporaneity requirement of Rule 106

was violated. See State v. Melvin, No. COA-09-62-2, 2011 WL 2462570, at *3 (N.C.

Ct. App. June 21, 2011) (unpublished) (noting that where the defendant initially

introduced letters at trial to impeach a witness, the State was entitled to submit the

 - 11 -
 STATE V. HENSLEY

 Opinion of the Court

letters in their entirety pursuant to Rule 106, which the State did on redirect).2 The

trial court did not abuse its discretion. Defendant’s argument is overruled.

 II. Rule 403

 Defendant next claims the trial court erred in admitting the challenged

portions of Detective Robinson’s notes because they were not relevant to the charge

at issue. See N.C. Gen. Stat. § 8C-1, Rules 401–02 (2015). We hold that defendant

“opened the door” to the first page of Detective Robinson’s interview notes by eliciting

testimony about the notation “Denies all involvement with any guns” during her

cross-examination.

 As our Supreme Court has explained,

 “[t]he law wisely permits evidence not otherwise
 admissible to be offered to explain or rebut evidence
 elicited by the defendant himself. Where one party
 introduces evidence as to a particular fact or transaction,
 the other party is entitled to introduce evidence in
 explanation or rebuttal thereof, even though such latter
 evidence would be incompetent or irrelevant had it been
 offered initially.”

State v. Anthony, 354 N.C. 372, 415, 555 S.E.2d 557, 585–86 (2001) (alteration in

original) (internal citations omitted) (quoting State v. McNeil, 350 N.C. 657, 682, 518

S.E.2d 486, 501 (1999)). The first page of Detective Robinson’s notes, which recounted

 2We note with approval the concurring opinion setting forth the possible peril in courts citing
to unpublished opinions. We retain the cite to the above unpublished opinion as an example of the
importance of the role such opinions play as in the instant case, but also the possibility of unintended
consequences that may arise if non-precedential case law “bleeds over” into precedential case law.

 - 12 -
 STATE V. HENSLEY

 Opinion of the Court

defendant’s self-reported criminal history, was admissible to dispel the favorable

inference created by defendant’s selective introduction of a single phrase found at the

bottom of the page. See State v. Ratliff, 341 N.C. 610, 614–16, 461 S.E.2d 325, 327–

28 (1995). By contextualizing the phrase, “Denies all involvement with any guns,”

the remaining text tended to show that defendant’s seeming denial was unrelated to

his sale of the firearm to Stanley in 2013.

 Defendant further claims the trial court’s admission of the challenged evidence

amounted to an abuse of discretion under N.C.G.S. § 8C-1, Rule 403, because “the

probative value of challenged notes was substantially outweighed by their undue

prejudice.” By referring to defendant trading “roxies,” using counterfeit money, and

serving “13 days in Albany N.Y. for grand theft auto” in 1985, he contends the notes

created an “intolerable” risk that the jury based its verdict on impermissible factors

other than the substantive evidence of his guilt. Defendant also suggests the court

failed to undertake “a proper Rule 403 balancing analysis” by weighing the probative

value of the challenged notes against the risk they posed of unfair prejudice. We

disagree.

 Rule 403 provides that otherwise relevant evidence “may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice . . . .”

N.C.G.S. § 8C-1, Rules 403. “Whether to exclude evidence under Rule 403 is a matter

within the sound discretion of the trial court.” State v. Penley, 318 N.C. 30, 41, 347

 - 13 -
 STATE V. HENSLEY

 Opinion of the Court

S.E.2d 783, 789 (1986) (citation omitted). “A trial court may be reversed for abuse of

discretion only upon a showing that its ruling was manifestly unsupported by reason

and could not have been the result of a reasoned decision.” Id. (quoting State v.

Riddick, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)).

 While the evidence defendant argues should have been excluded is certainly

prejudicial, we cannot say that the trial court abused its discretion in admitting the

evidence. And, while we are not conducting a plain error review, we note for the

record that significant evidence exists—from the direct witness testimony of Mr.

Stanley to defendant’s unchallenged admission to selling the gun—such that it is not

likely a different result would have been obtained at trial had the evidence been

excluded.

 Further, this Court has held that, “[w]here . . . a party is responsible for

‘opening the door’ with respect to certain evidence, that party may not complain of

unfair prejudice resulting from its admission.” Everhart v. O’Charley’s Inc., 200 N.C.

App. 142, 148, 683 S.E.2d 728, 735 (2009) (citing State v. Wilson, 151 N.C. App. 219,

226, 565 S.E.2d 223, 228 (2002)). But cf. State v. Cotton, 329 N.C. 764, 765–69, 407

S.E.2d 514, 516–18 (1991) (addressing but rejecting defendant’s argument under Rule

403). Having created the impression that he “[d]enie[d] all involvement with any

guns” when questioned about the firearm sold to Stanley, defendant cannot complain

of unfair prejudice when the trial court allowed the State’s evidence that defendant’s

 - 14 -
 STATE V. HENSLEY

 Opinion of the Court

denial pertained to his criminal history prior to this incident. See Cotton, 329 N.C.

at 769, 407 S.E.2d at 518. We find no abuse of discretion by the trial court.

 NO ERROR.

 Judge STROUD concurs by separate opinion.

 Judge DAVIS concurs in the result only.

 - 15 -
No. COA 16-689 – State v. Hensley

 STROUD, Judge, concurring.

 I concur in the majority opinion except as to any citation of unpublished cases

of this Court. In briefs filed in this Court, the Rule 30(e) of the Rules of Appellate

Procedure allows citation of unpublished cases only in very limited circumstances.

 (e) Unpublished Opinions.

 (1) In order to minimize the cost of publication and of
 providing storage space for the published reports, the
 Court of Appeals is not required to publish an opinion in
 every decided case. If the panel that hears the case
 determines that the appeal involves no new legal principles
 and that an opinion, if published, would have no value as a
 precedent, it may direct that no opinion be published.

 ....

 (3) An unpublished decision of the North Carolina Court of
 Appeals does not constitute controlling legal authority.
 Accordingly, citation of unpublished opinions in briefs,
 memoranda, and oral arguments in the trial and appellate
 divisions is disfavored, except for the purpose of
 establishing claim preclusion, issue preclusion, or the law
 of the case. If a party believes, nevertheless, that an
 unpublished opinion has precedential value to a material
 issue in the case and that there is no published opinion that
 would serve as well, the party may cite the unpublished
 opinion if that party serves a copy thereof on all other
 parties in the case and on the court to which the citation is
 offered. This service may be accomplished by including the
 copy of the unpublished opinion in an addendum to a brief
 or memorandum. A party who cites an unpublished
 opinion for the first time at a hearing or oral argument
 must attach a copy of the unpublished opinion relied upon
 pursuant to the requirements of Rule 28(g). When citing
 an unpublished opinion, a party must indicate the opinion’s
 unpublished status.
 STATE V. HENSLEY

 STROUD, J., concurring

N.C. R. App. P. 30(e).

 Our Court has discussed the limited circumstances in which citation to

unpublished opinions is appropriate many times. For example, in Long v. Harris,

this Court stressed the importance of compliance with Rule 30(e):

 An unpublished opinion establishes no precedent and is not
 binding authority[.]

 Compliance with the Rules is mandatory and
 violation thereof subjects a party to sanctions. See N.C. R.
 App. P. 25(b) (Court may “impose a sanction against a
 party or attorney or both when the court determines that
 such party or attorney or both substantially failed to
 comply with” the Rules). Notwithstanding, we have elected
 in our discretion pursuant to N.C. R. App. P. 2 to review
 defendant’s contentions herein, but without consideration
 of the unpublished decision cited in his appellate brief.
 Nonetheless, we remind counsel of the explicit provisions
 of N.C. R. App. P. 30(e), prohibiting citation of unpublished
 opinions and use thereof as precedent.

Long v. Harris, 137 N.C. App. 461, 470-71, 528 S.E.2d 633, 639 (2000) (citations,

quotation marks, and brackets omitted).

 More recently, this Court noted:

 Citation to unpublished authority is expressly disfavored
 by our appellate rules but permitted if a party, in pertinent
 part, believes there is no published opinion that would
 serve as well as the unpublished opinion. Neither of the
 principles propounded by the surety justify citation to the
 [unpublished opinion cited by a party in its brief] in this
 matter, and we reiterate that citation to unpublished
 opinions is intended solely in those instances where the
 persuasive value of a case is manifestly superior to any

 2
 STATE V. HENSLEY

 STROUD, J., concurring

 published opinion.

State ex rel. Moore Cnty. Bd. of Educ. v. Pelletier, 168 N.C. App. 218, 222, 606 S.E.2d

907, 909 (2005) (citation, quotation marks, and ellipses omitted).

 Although the Rules of Appellate Procedure do not address this Court’s own

citation to unpublished opinions, I believe that there are very good reasons for the

Court to follow the same rule which we require parties filing briefs in our Court to

follow. In this particular case, neither party’s brief citied to the unpublished case

cited in the majority opinion, so we need not address it for that reason. I also believe

that citation to an unpublished opinion is not necessary for the majority’s opinion.

 Although I admit I have not done any formal analysis of the frequency of

citation of unpublished opinions in opinions of this Court or in appellate briefs, it

appears to me that these citations are increasing in frequency. This is not surprising,

given the large numbers of unpublished opinions. But there are still many excellent

reasons courts generally discourage reliance upon unpublished opinions, which have

been specifically designated as being non-precedential. The panel which issues each

opinion decides when it is written whether the opinion will have precedential value,

and there are many different reasons judges decide not to publish opinions. See

Donna S. Stroud, The Bottom of the Iceberg: Unpublished Opinions, 37 Campbell L.

Rev. 333 (2015). We cannot know the reasons the judges on a particular case decided

 3
 STATE V. HENSLEY

 STROUD, J., concurring

to issue an opinion as unpublished, but if we did, those reasons may demonstrate

exactly why we should not rely upon it.

 One of my more practical concerns regarding citation to unpublished opinions

in this Court’s opinions is that it will encourage litigants to do more of the same.

Another more serious concern is that the law which is developed in the unpublished,

non-precedential opinions has a tendency to bleed over into other cases and

eventually to end up in precedential opinions, even though it may not be cited as such.

This tendency has been studied in some limited areas of law, but I see no reason to

believe that it cannot happen in any area of law. See e.g., Brian Soucek, Copy-Paste

Precedent, 13 J. App. Prac. & Process 153, 154 (2012). In his article, Soucek describes

how portions of text from unpublished opinions regarding different interpretations of

“social visibility” in asylum cases in the Second Circuit have been copied and pasted

without acknowledgement in later published opinions, leading to error in the court’s

analysis of this issue. Id. at 158-71 (discussing Romero v. Mukasey, 262 F. App’x 328

(2d Cir. 2008) and noting subsequent decisions that cited Romero). We should err on

the side of caution in the development of our jurisprudence by not relying upon or

citing unpublished opinions if it can possibly be avoided.

 4