IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1051

Filed: 31 December 2020

Rowan County No. 18 CRS 051333

STATE OF NORTH CAROLINA

v.

SUWANDA EVETTE HUMPHREYS, Defendant.

Appeal by Defendant from judgment entered 20 March 2019 by Judge Anna M. Wagoner in Rowan County Superior Court. Heard in the Court of Appeals 12 August 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Erin Hukka, for the State.*

*Blass Law, PLLC, by Danielle Blass, for defendant-appellant.*

MURPHY, Judge.

When a defendant makes a motion to dismiss a charge of disorderly conduct on school property under N.C.G.S. § 14-288.4(a)(6), the State must present substantial evidence to show a substantial interference with the operation of the school in educating students. Here, the only evidence of Defendant's interference with the operation of a school and its students was a group of students hearing her use profanity on their way to class. This alone does not constitute evidence of a

substantial interference with the operation of the school and its students. The trial court erred in denying Defendant's motion to dismiss the charge of disorderly conduct.

Additionally, when a defendant moves to dismiss a charge of resisting a public officer in violation of N.C.G.S. § 14-233, the State must present substantial evidence to support a finding the defendant willfully and unlawfully obstructed, delayed, or resisted a public officer. When a defendant merely remonstrates, she does not resist arrest. Similarly, even if a defendant resists arrest but does so with the belief she has the right to, caselaw holds she does not act willfully and unlawfully under N.C.G.S. § 14-233. Here, there is insufficient evidence Defendant did anything more than merely remonstrate. Even if her actions exceeded remonstration, there is insufficient evidence Defendant acted willfully in purposeful or deliberate violation of the law as she reasonably believed she had the right to act as she did in observing the officers and protesting what she perceived as an unlawful search. The trial court erred in denying Defendant's motion to dismiss the charge of resisting a public officer.

## BACKGROUND

On 28 March 2018, the school resource officer, Deputy Tommy Cato ("Deputy Cato"), requested a random K-9 walkthrough of the East Rowan High School parking lot. During the walkthrough, K-9 Kilo, led by Sergeant Wes Smith ("Sergeant Smith"), alerted to Defendant's car, driven by her daughter. The assistant principal, Charles Edwards, notified Defendant, Suwanda Evette Humphreys, the dog had

alerted to her car, and Defendant arrived at the parking lot shortly thereafter, where her daughter had been sent from class. Sergeant Smith testified Defendant was belligerent, cursing, and very loud upon her arrival.

Although the school officials believed they could search the car without consent, they attempted to gain consent for the search from Defendant. Defendant initially refused to give consent, stating the officers needed a warrant; however, eventually she consented to the search of her car once she was told the car would be towed and a search warrant would be obtained if it was not searched at the school. Throughout Sergeant Smith's search, Defendant made sure to observe the conduct of Sergeant Smith to ensure the search was conducted appropriately. {Video[1] 1:00-1:45} Defendant also repeatedly looked over Sergeant Smith's shoulder while he was attempting to search the car. Deputy Cato and Sergeant Smith repeatedly asked Defendant to back up or back away from Sergeant Smith. Defendant did not comply with Deputy Cato's or Sergeant Smith's requests and continued observing the search. Also, during the search, Defendant said to a class of students walking through the parking lot to their weightlifting class, "[y]ou-all about to see a black woman -- an unarmed black woman get shot."

---

[1] Throughout our opinion we refer to State's Exhibit 1, a video depicting some of the interactions leading up to Defendant's arrest, as "Video," and fully incorporate the same into our opinion by reference for a more complete understanding of the evidence.

At some point during the search, while Sergeant Smith was on the passenger's-side of the car, Defendant moved to the back driver's-side of the car. {Video 0:40} After telling her daughter "make sure you can see," {Video 1:00} Defendant moved to the front driver's-side of the car. {Video 1:05} When she moved to the front of the car, Deputy Cato, who was at the back driver's-side of the car, instructed her to "come on back" to where he was {Video 1:07} because "[he needed] to keep an eye on [her]." {Video 1:15} Defendant walked out of view of Deputy Cato for approximately three seconds {Video 1:18-1:21} and then returned to be in Deputy Cato's view. {Video 1:20} While in Deputy Cato's view, Defendant refused to come back to him and stated, "you can keep an eye on me from right here." {Video 1:20-1:23} Deputy Cato again stated, "come on back over here," and Defendant again responded, "you can keep an eye on me from right here." {Video 1:24-1:28} Defendant then instructed her daughter to turn her "recorder on cause [Deputy Cato could see her], [she was] not in this man's way and [she was not] bothering nobody and [she was] not moving." {Video 1:27-1:36} Deputy Cato then asked, "are you refusing to come back here?" {Video 1:37-1:39} To which Defendant responded, "I'm not breaking no law." {Video 1:38-1:41} Deputy Cato stated, "you're under arrest." {Video 1:40-1:42} While being arrested, Defendant asked, "for what?" and stated, "I'm not breaking no law." {Video 1:41-1:48} She continued to reiterate that she had broken no law even after her arrest. {Video 2:00-3:30}

Following this incident, Defendant was charged with disorderly conduct in violation of N.C.G.S. § 14-288.4(a) and resisting a public officer in violation of N.C.G.S. § 14-223. Deputy Cato later testified at trial he placed Defendant under arrest because she resisted, delayed, or obstructed him by moving away from him, which he believed impeded his ability to observe Defendant, and her daughter who was at the back passenger's-side of the car, while Sergeant Smith searched the car. {Video 1:00-1:45}

Defendant was tried on 20 March 2019. At the close of the State's evidence, Defendant unsuccessfully moved to dismiss both charges for insufficient evidence. Defendant renewed both motions to dismiss at the close of all evidence, but the trial court again denied the motions. The jury found Defendant guilty of disorderly conduct and resisting a public officer. Defendant entered written notice of appeal on 28 March 2019.

## ANALYSIS

On appeal, Defendant argues: (A) the trial court erred by failing to dismiss the disorderly conduct charge for insufficient evidence or we should vacate the judgment against her for disorderly conduct because of a fatal variance between the *Magistrate's Order* and evidence at trial, and alternatively argues ineffective assistance of counsel; and (B) the trial court erred by failing to dismiss the resisting a public officer charge.

## A. Disorderly Conduct

With respect to disorderly conduct on school property under N.C.G.S. § 14-288.4(a)(6) Defendant argues the State failed to present substantial evidence showing Defendant interfered with the operation of the school. We agree. There is not substantial evidence to support the disorderly conduct charge under N.C.G.S. § 14-288.4(a)(6) because a reasonable mind would not interpret Defendant's conduct to substantially interfere with the instructing and training of the students at the school.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "When reviewing a sufficiency of the evidence claim, this Court considers whether the evidence, taken in the light most favorable to the [S]tate and allowing every reasonable inference to be drawn therefrom, constitutes 'substantial evidence of each element of the crime charged.'" *State v. Taylor*, 362 N.C. 514, 538, 669 S.E.2d 239, 261 (2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

N.C.G.S. § 14-288.4(a)(6) reads:

> (a) Disorderly conduct is a public disturbance intentionally caused by any person who . . . :
> (6) Disrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or

discipline at any public or private educational institution or on the grounds adjacent thereto.

N.C.G.S. § 14-288.4(a)(6) (2019). N.C.G.S. § 14-288.1(8) defines "[p]ublic disturbance" as:

Any annoying, disturbing, or alarming act or condition exceeding the bounds of social toleration normal for the time and place in question which occurs in a public place or which occurs in, affects persons in, or is likely to affect persons in a place to which the public or a substantial group has access.

N.C.G.S. § 14-288.1(8) (2019).

Our Supreme court interpreted the exact language of N.C.G.S. § 14-288.4(a)(6) in *In re Eller*. "When the words 'interrupt' and 'disturb' are used in conjunction with the word 'school,' they mean to a person of ordinary intelligence a *substantial interference* with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled." *In re Eller*, 331 N.C. 714, 718, 417 S.E.2d 479, 482 (1992) (quoting *State v. Wiggins*, 272 N.C. 147, 154, 158 S.E.2d 37, 42 (1967)). Our Supreme Court there held "[u]nder the instant facts, we conclude that the State has not produced substantial evidence that the respondents' behavior constituted a 'substantial interference.'" *Id.* at 718, 417 S.E.2d at 482.

Our Supreme Court made no distinction between the two parts of the disjunction in N.C.G.S. § 14-288.4(a)(6) in applying the rule from *Wiggins*. Similarly, we have not made distinctions between the disjunction in N.C.G.S. § 14-288.4(a)(6) in applying the rule from *Wiggins*. *See, e.g., In re Grubb*, 103 N.C. App. 452, 453-54,

405 S.E.2d 797, 798 (1991) (applying the rule from *Wiggins* to the exact language currently in N.C.G.S. § 14-288.4(a)(6)); *In re Brown*, 150 N.C. App. 127, 129-131, 562 S.E.2d 583, 585-586 (2002) (applying the rule from *Wiggins* to a finding that a juvenile "engag[ed] in conduct which disturb[ed] the peace, order or discipline at [a] public . . . educational institution"); *In re Pineault*, 152 N.C. App. 196, 199, 566 S.E.2d 854, 857 (2002); *In re M.G.*, 156 N.C. App. 414, 416, 576 S.E.2d 398, 400-01 (2003); *In re S.M.*, 190 N.C. App. 579, 582-83, 660 S.E.2d 653, 655-56 (2008). We decline the State's invitation to do so here.

As a result, a defendant violates N.C.G.S. § 14-288.4(a)(6) if she causes "a *substantial interference* with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled." *Eller*, 331 N.C. at 718, 417 S.E.2d at 482.

> There is no "bright line" test for what constitutes "substantial interference" with a school. However, appellate cases decided since *Eller* have tended to uphold juvenile adjudications for disorderly conduct in school when there is evidence of, e.g., (1) the use of vulgar language by the student; (2) aggressive or violent behavior by the juvenile; or (3) disruptive behavior serious enough to require the student's teacher to leave her class unattended in order to discipline the student.

*S.M.*, 190 N.C. App. at 583-84, 660 S.E.2d at 656.

We have previously found a substantial disruption where a juvenile used vulgar language and required school staff to delay the performance of their duties. *See Pineault*, 152 N.C. App. at 199, 566 S.E.2d at 857 (a student loudly stated "[f]—k

- 8 -

you" to other students and then a teacher, who had to spend several minutes escorting the student to the principal's office); *M.G.*, 156 N.C. App. at 415, 576 S.E.2d at 399 (a student yelled "shut the f—k up" to a group of students and was escorted by a teacher to detention for several minutes).

However, an interference has been found not to be substantial when the interference was not extended or significant, and required little intervention to remedy. *See Grubb*, 103 N.C. App. at 452-53, 405 S.E.2d at 797 (a student distracted her class by talking loudly during class, and continued to do so even after being reprimanded, however stopped talking after a second reprimand); *Eller*, 331 N.C. at 716, 417 S.E.2d at 481-82 (two students struck a radiator with a carpenter's nail several times during class, making a loud rattling sound that caused other students to look for where the sound was coming from and caused the teacher to interrupt her lecture for fifteen to twenty seconds each time the noise was made); *Brown*, 150 N.C. App. at 127-28, 562 S.E.2d at 584-85 (a student talked during a test multiple times, backtalked a teacher, slammed the door to his classroom, and then cried and begged his teacher not to send him to the office); *S.M.*, 190 N.C. App. at 585, 660 S.E.2d at 657 (a student was in the hallway when she should have been in class, ran when asked to stop, was eventually chased down the hall and stopped by the school resource officer, and a few students and teachers watched as the student was escorted to the office).

Here, Defendant's conduct, viewed in the light most favorable to the State, was not a "*substantial interference* with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled" in violation of N.C.G.S. § 14-288.4(a)(6). *Eller*, 331 N.C. at 718, 417 S.E.2d at 482. Once the K-9 indicated Defendant's car, operated by her daughter, might contain drugs, school officials and police officers waited for Defendant to arrive at the school since she indicated she did not want the car searched without a warrant.

Upon arriving, Defendant continued to state her car could not be searched, at which point the students of a class, walking through the parking lot to get to the field house for weightlifting, had to be redirected around the area of the search. Additionally, some students arriving to school late were directed around the area of the search. However, the school would have directed students around the police search regardless of Defendant's presence, words, or actions. Defendant did not cause these potential interferences.

Throughout the incident Defendant used profanity. Additionally, while the class of students walked through the parking lot, Defendant said "[y]ou-all about to see a black woman -- an unarmed black woman get shot." There was no evidence that a teacher was instructing this class of students at that time. Defendant's statement to the class of students is the only evidence in the Record where Defendant engaged with students other than her daughter. Rather, they were walking through the

parking lot to reach the field house, where their weightlifting class met. Similarly, there was some indication these students "hear[d] [Defendant] saying some things she probably shouldn't say," presumably profanity. However, since "there[] [was] a commotion going on [with] a police officer [], [and] a dog . . . [the students] all look[ed]," and "hear[d] [Defendant] saying some things she probably shouldn't say." According to the testimony, the students took notice of the commotion along their normal path to their weightlifting class regardless of Defendant's actions, and Defendant's profanity did not interfere with the students by drawing their attention to the commotion.

Based on this evidence, even when viewed in the light most favorable to the State, the only interference with a school function caused by Defendant was the class of high school students hearing profanity during their normal walk to class. This alone does not constitute a substantial interference. The scope of Defendant's interference was minor in that it was only observed by a single group of students and a few individual students arriving late, along with the two officers and two assistant principals. The students who saw and heard the commotion did so only briefly while walking to class; whereas, the adults who witnessed it are fully capable of hearing such language. Additionally, unlike in *M.G.* and *Pineault*, there is no indication Defendant's conduct prolonged any process such that school staff could not perform their regular duties; in fact, school staff continued to perform their regular duties of

being present for the search. Finally, there was no aggressive or violent behavior on the part of Defendant beyond the use of profanity directed at law enforcement and an assistant principal, or its use in a general communicative manner. There was no evidence Defendant's conduct caused "a *substantial interference* with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled." *Eller*, 331 N.C. at 718, 417 S.E.2d at 482.

The trial court erred by denying Defendant's motion to dismiss the charge of disorderly conduct for insufficient evidence under N.C.G.S. § 14-288.4(a)(6). We reverse the trial court's denial of the motion to dismiss and vacate Defendant's conviction for disorderly conduct.

Although both parties discuss disorderly conduct under N.C.G.S. § 14-288.4(a)(2), we note, at the beginning of the trial, the State voluntarily dismissed any basis for disorderly conduct other than N.C.G.S. § 14-288.4(a)(6). *See* N.C.G.S. § 15A-931(a) (2019) ("[T]he prosecutor may dismiss any charges stated in a criminal pleading including those deferred for prosecution by entering an oral dismissal in open court before or during the trial, or by filing a written dismissal with the clerk at any time."). Any charge under N.C.G.S. § 14-288.4(a)(2) was voluntarily dismissed based on the following exchange:

> [THE STATE]: -- before we proceed just to clarify on that warrant, on the disorderly conduct, the count two, the State is going to proceed under [N.C.G.S. § 14-288.4], but

(a)(6) -- specifically (a)(6), which would be on educational premise.

THE COURT: As opposed to?

[THE STATE]: It just lists the statute as a whole. We're just going to narrow it in to (a)(6), which would be causing a public disturbance, disrupting, disturbing or interfering with the teaching of students at an educational institution, or engaging in conduct that disturbs the peace, order or discipline at an educational institution.

THE COURT: Any objection?

[DEFENDANT]: Without objection.

THE COURT: No objection. Okay.

As a result, we need not address any argument related to disorderly conduct under N.C.G.S. § 14-288.4(a)(2).

Defendant also contends there was a fatal variance between the *Magistrate's Order* and the evidence at trial, but admits she did not preserve this issue for appeal and asks us to invoke Rule 2 to review it. Since this issue is rendered moot by the State's voluntary dismissal and our reversal of the disorderly conduct conviction above, we decline to invoke Rule 2 to review this unpreserved issue, and do not address the alternative ineffective assistance of counsel argument.

## B. Resisting a Public Officer

Defendant argues the trial court erred by failing to dismiss the charge for resisting a public officer because: (1) Deputy Cato was not discharging an official duty; (2) Defendant did not obstruct Deputy Cato from attempting to discharge a

duty; and (3) Defendant did not act willfully and unlawfully. Although Deputy Cato was discharging his official duties, Defendant did not obstruct Deputy Cato from performing these duties and did not act willfully and unlawfully. The trial court erred by denying Defendant's motion to dismiss the charge of resisting a public officer in violation of N.C.G.S. § 14-233. As previously stated, "[t]his Court reviews the trial court's denial of a motion to dismiss *de novo.*" *Smith*, 186 N.C. App. at 62, 650 S.E.2d at 33.

N.C.G.S. § 14-223 has five essential elements:

(1) that the victim was a public officer;

(2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;

(3) that the victim was discharging or attempting to discharge a duty of his office;

(4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and

(5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Peters*, 255 N.C. App. 382, 386-87, 804 S.E.2d 811, 815 (2017) (citing *State v. Washington*, 193 N.C. App. 670, 679, 668 S.E.2d 622, 628 (2008)); *see also* N.C.G.S. § 14-223 (2019). Defendant concedes that she knew the victim was a public officer.

**1. Discharging a Public Duty**

The element requiring the discharge of an official duty is met. Deputy Cato was discharging his duty to investigate the car to which K-9 Kilo alerted. With respect to this duty, Deputy Cato stated, "I'm a law enforcement officer, and yes, I am called by the admin staff occasionally for marijuana on campus, for a weapon on campus, for disorderly conduct." Deputy Cato was also discharging his duty to keep Sergeant Smith safe. *See State v. Friend*, 237 N.C. App. 490, 495, 768 S.E.2d 146, 149 (2014) (holding an officer remaining at a jail to ensure the safety of other officers constituted an official duty of his office). Like the officer in *Friend*, Deputy Cato was discharging his duty to keep his fellow officer safe during the search of Defendant's car. Therefore, the official duty element is satisfied.

**2. Resist, Delay, or Obstruct**

However, there is not substantial evidence to support the resistance, delay, or obstruction element. "[M]erely remonstrating with an officer in behalf of another, or criticizing or questioning an officer while he is performing his duty, when done in an orderly manner, does not amount to obstructing or delaying an officer in the performance of his duties." *State v. Leigh*, 278 N.C. 243, 251, 179 S.E.2d 708, 713 (1971).

The State relies on *State v. Bell* to support its position that Defendant was not merely remonstrating, but *Bell* is distinguishable from the present case. *State v. Bell*, 164 N.C. App. 83, 594 S.E.2d 824 (2004). In *Bell*, the defendant interrupted a police

officer's investigation of a student by shouting loudly, attracting a nearby crowd, leaning inside the officer's patrol car, pushing the officer, preventing the officer from closing the door to his patrol car, and repeatedly disobeying orders to step back. *Id.* at 85-86, 594 S.E.2d at 826. We held the evidence "was sufficient to allow a jury to find that [the] defendant obstructed and delayed [the officer] in the performance of his duties." *Id.* at 95, 594 S.E.2d at 831. Similarly, in *State v. Singletary,* the defendant exceeded mere remonstration and obstructed an officer's duties by advancing within six feet of an officer, waiving his fists in the air, after being told to halt. *State v. Singletary*, 73 N.C. App. 612, 616, 327 S.E.2d 11, 14 (1985).

At trial, Deputy Cato indicated Defendant resisted, delayed, or obstructed him when she moved away from him. Although Defendant may have been within six feet of Sergeant Smith, her actions and words were not aggressive or suggestive of violence. Rather, Defendant appeared to orderly, even if loudly, remonstrate by remaining where she could observe Sergeant Smith executing the search. Unlike the defendant in *Bell*, Defendant never pushed either of the officers or physically obstructed their search.

Additionally, after Defendant walked to the front driver's-side of the car being searched, and partially out of view in front of another car, she was told to "come on back [to Deputy Cato]" because he needed to "keep an eye on [her]." {Video 1:05-1:15} In response, Defendant walked back into his view and told Deputy Cato he could

- 16 -

"keep an eye on [her from where he was]." {Video 1:18-1:23} For the entirety of this exchange, except the three seconds when Defendant started to walk in front of the other car parked to the left of the car being searched and returned into view upon Deputy Cato's instruction, {Video 1:18-1:21} Defendant stayed in view of Deputy Cato. Defendant was told to come back because she needed to be where Deputy Cato could see her and, although she did not come all the way back to Deputy Cato, she remained in view of Deputy Cato in a location where she had previously been observing the search of her vehicle. As such, the factual situation in this case is distinct from *Bell* and *Singletary* and does not exceed mere remonstration.

There was insufficient evidence of Defendant having resisted, delayed, or obstructed Deputy Cato. The trial court erred in denying Defendant's motion to dismiss. We reverse the trial court's denial of the motion to dismiss the resisting a public officer charge and vacate the conviction for resisting a public officer.

**3. Willful and Unlawful Action**

As an independent and adequate ground for reversal, the willful and unlawful element is not satisfied.

> To establish guilt beyond a reasonable doubt, [N.C.G.S. §] 14-223 requires that the State prove a defendant acted "willfully" when resisting, delaying, or obstructing a public officer in the discharge of his or her duties. To prove 'willfulness,' the State must introduce sufficient evidence that the defendant acted without justification or excuse, "purposely and deliberately in violation of law."

*Peters*, 255 N.C. App. at 388, 804 S.E.2d at 816 (quoting *State v. Arnold*, 264 N.C. 348, 349, 141 S.E.2d 473, 474 (1965)).

> When used in [N.C.G.S. § 14-223], 'willful' is to be interpreted as something more than an intention to do a thing. It implies the doing [of] the act purposely and deliberately, indicating a purpose to do it without authority — careless whether [someone] has the right or not — in violation of law, and it is this which makes the criminal intent without which one cannot be brought within the meaning of a criminal statute.

*Id.* (interpreting "willful" in the context of a violation of N.C.G.S. § 14-223) (quoting *State v. Moore*, 240 N.C. App. 465, 478, 770 S.E.2d 131, 141 (2015)). Determining intent entails considering the "acts and conduct of the defendant and the general circumstances existing at the time[.]" *State v. Norman*, 14 N.C. App. 394, 399, 188 S.E.2d 667, 670 (1972).

Defendant indicated she stood near the front of her car in order to lawfully observe the search. The evidence does not indicate that she stood near her car with a purpose to do so without authority or careless of whether she had the right to stand there. In fact, on the scene, Defendant stated, "I'm not breaking no law" when she was told she needed to return to Deputy Cato and then was arrested. {Video 1:39} During and after being arrested, Defendant reiterated she was not breaking any law. {Video 1:46, 2:00, 2:24, 3:30} Although Deputy Cato and Sergeant Smith asked Defendant to move multiple times, it is clear that even after these requests Defendant believed she had the right to stand and observe the search, so long as Deputy Cato

could see her and she was not obstructing Sergeant Smith's search of the vehicle. {Video 1:00-2:30} A reasonable mind would not conclude this evidence supports a finding that Defendant acted "purposely and deliberately, indicating a purpose to do it without authority — careless whether [she had] the right or not — in violation of law[.]" *Peters*, 255 N.C. App. at 388, 804 S.E.2d at 816 (quoting *Moore*, 240 N.C. App. at 478, 770 S.E.2d at 141).

There was insufficient evidence of Defendant acting willfully and unlawfully as used in N.C.G.S. § 14-233. The trial court erred in denying Defendant's motion to dismiss. We reverse the trial court's denial of the motion to dismiss the resisting a public officer charge and vacate Defendant's conviction for resisting a public officer.

## CONCLUSION

The trial court erred in denying the motion to dismiss the disorderly conduct charge because there was not substantial evidence to support Defendant's violation of N.C.G.S. § 14-288.4(a)(6). The trial court also erred in denying Defendant's motion to dismiss the resisting a public officer charge because the State did not present substantial evidence to support a finding Defendant willfully and unlawfully obstructed, delayed, or resisted Deputy Cato in violation of N.C.G.S. § 14-233. We reverse the rulings on the motions to dismiss and vacate Defendant's convictions.

REVERSED.

Judges HAMPSON and YOUNG concur.